## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK Z. SAPPIR

    Plaintiff

v.

UPMC; UPMC ENTERPRISES;
UPMC BENEFIT MANAGEMENT
SERVICES, INC., AND
DIVERSIFIED SEARCH GROUP

    Defendants

:  No. 2:26-cv-00568
:
:
:  **JURY TRIAL DEMANDED**
:
:
:
:
:
:
:
:
:
:

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS
UPMC PRESBYTERIAN SHADYSIDE AND
<u>UPMC BENEFIT MANAGEMENT SERVICES, INC.</u>**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................1

II. RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL
    BACKGROUND ..................................................................................................3

    A.  The Parties and Plaintiff's Employment ................................................. 3

    B.  Plaintiff's Administrative Charges of Discrimination ........................... 5

        1.  June 3, 2024 Charges of Discrimination, Nos. 533-2024-02262 and
            533-2024-02265 ........................................................................... 6

        2.  July 3, 2024 Charges of Discrimination, Nos. 533-2024-02451 and
            533-2024-02452 ........................................................................... 6

        3.  May 12, 2025 Charge of Discrimination, No. 533-2025-02182 ................. 7

        4.  The Right-to-Sue Letters ............................................................... 8

    C.  The Complaint ....................................................................................... 8

III. LEGAL STANDARD ..........................................................................................9

IV. ARGUMENT ......................................................................................................10

    A.  The Complaint's Race Discrimination Claims Should Be Dismissed With
        Prejudice. ............................................................................................. 10

        1.  Plaintiff Failed to Exhaust Administrative Remedies as to His Title
            VII and PHRA Race Discrimination Claims. ........................................ 10

        2.  The Complaint Fails to State Any Claim of Race Discrimination............ 13

            a.  The Complaint Fails to State a Race Discrimination Claim
                Based on Plaintiff's Non-Selection for the Senior HR
                Director Position in August 2023. ...............................................14

            b.  The Complaint Fails to State Any Claim of Race
                Discrimination Based on Plaintiff's Separation or His Non-
                Selection for Positions to Which He Applied Post-
                Separation. .........................................................................18

    B.  All PHRA and Title VII Claims Based on Plaintiff's Unsuccessful
        Candidacy for the Senior HR Director Position in August 2023 Are Time-
        Barred................................................................................................. 19

1.      Plaintiff Did Not Timely File a PHRA Claim Based on His Non-Selection for the Senior HR Director Position in August 2023. ............... 19

2.      Plaintiff Did Not Timely File Any Title VII Claims Based on His Non-Selection for the Senior HR Director Position in August 2023. ........ 20

C.      The Complaint Includes Facially Implausible Claims Against Certain UPMC Defendants That the Court Should Dismiss. ........................................... 22

D.      The Complaint's Allegations Based on Plaintiff's Unsuccessful Post-Separation Applications Are Too Vague and Conclusory to State a Retaliation Claim. ....................................................................................... 24

V.      CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Antol v. Perry*,
    82 F.3d 1291 (3d Cir. 1996)................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................9, 22

*Bailey v. Storlazzi*,
    729 A.2d 1206 (Pa. Super. 1999)........................................................................11

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007)...............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................9, 16, 22

*Bragg v. Eat N Park Hosp. Grp., Inc.*,
    No. 2:25-CV-00813-CB, 2026 WL 1282738 (W.D. Pa. May 11, 2026) (Bissoon, C.J.)
    ................................................................................................................ 11-13

*Branch v. Temple Univ.*,
    554 F. Supp. 3d 642 (E.D. Pa. 2021) .................................................................13

*Brentley v. City of Pittsburgh*,
    No. CV 20-489, 2023 WL 8004926 (W.D. Pa. Nov. 17, 2023),
    *aff'd*, No. 23-3203, 2024 WL 4691077 (3d Cir. Nov. 6, 2024)........................................10, 17

*Browm v. Envoy Air Inc.*,
    No. 14–383, 2014 WL 6682540 (W.D. Pa. Nov. 25, 2014) ............................................. 12-13

*Brown v. J. Kaz, Inc.*,
    581 F.3d 175 (3d Cir. 2009).............................................................................14

*Burgh v. Borough Council of Montrose*,
    251 F.3d 465 (3d Cir. 2001)............................................................................ 10-11

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    468 U.S. 837 (1984)..................................................................................2, 21

*Colonna v. UPMC Hamot*,
    No. 1:16-CV-0053 (BJR), 2017 WL 4235937 (W.D. Pa. Sept. 25, 2017) ...............................3

*Davis v. U.S. Steel Supply*,
    581 F.2d 335 (3d Cir. 1978)..............................................................................11

*Duncan v. Walker*,
  533 U.S. 167 (2001).................................................................................................20

*Dzibela v. BlackRock Inc.*,
  No. 23-02093 (RK) (JBD), 2024 WL 4349813 (D.N.J. Sept. 20, 2024) ........................... 16-17

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)........................................................................................18

*Fullman v. City of Phila.*,
  No. 24-CV-0682, 2025 WL 2825586 (E.D. Pa. Oct. 2, 2025) ..................................................24

*Gharzouzi v. Northwestern Human Servs. of Pa.*,
  225 F. Supp. 2d 514 (E.D. Pa. 2002) .............................................................................21

*Glover v. SpiriTrust Lutheran*,
  No. 1:24-CV-1561, 2025 WL 1523005 (M.D. Pa. May 28, 2025)...........................................21

*Han v. Temple Univ.*,
  807 F. Supp. 3d 442 (E.D. Pa. 2025) ............................................................................16

*Hassell v. Johnson & Johnson*,
  No. 13-CV-4109 JAP, 2014 WL 1744266 (D.N.J. May 1, 2014) ...........................................15

*Jones v. Sch. Dist. of Phila.*,
  198 F.3d 403 (3d Cir. 1999).......................................................................................14

*Kocian v. Getty Refining & Marketing Co.*,
  707 F.2d 748 (3d Cir. 1983).......................................................................................21

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ............................................................................................9

*Lawal v. McDonald*,
  546 F. App'x 107 (3d Cir. 2014) .................................................................................24

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024)..................................................................................................21

*Lopez v. Lancaster Farm Fresh Organics, LLC*,
  No. 5:21-CV-01862, 2021 WL 3884296 (E.D. Pa. Aug. 31, 2021) ..................................21, 24

*Mammen v. Thomas Jefferson Univ.*,
  462 F. Supp. 3d 518 (E.D. Pa. 2020) ...........................................................................11

*Mangold v. PECO Energy*,
  No. 19-5912, 2021 WL 6072818 (E.D. Pa. Dec. 23, 2021).................................................16

*Martinez v. UPMC Susquehanna,*
    986 F.3d 261 (3d Cir. 2021)..................................................................................18

*McGarrigle v. Cristo Rey Philadelphia High Sch.,*
    No. CV 22-4713, 2023 WL 2975870 (E.D. Pa. Apr. 17, 2023) ..............................14

*Miller v. City Mission,*
    No. 2:23-CV-834, 2023 WL 9002732 (W.D. Pa. Dec. 28, 2023) ..................... 11-13

*Mohasco Corp. v. Silver,*
    447 U.S. 807 (1980)...............................................................................................22

*Norman v. Kmart Corp.,*
    485 F. App'x 591 (3d Cir. 2012) ...........................................................................14

*Oscar Mayer Co. v. Evans,*
    441 U.S. 750 (1979)...............................................................................................22

*Seredinski v. Clifton Precision Prods. Co., Div. of Litton Sys., Inc.,*
    776 F.2d 56 (3d Cir. 1985).....................................................................................22

*Smith v. DeJoy,*
    No. CV 21-706, 2022 WL 16950447 (W.D. Pa. Nov. 15, 2022) ............................14

*Tavarez v. Twp. of Egg Harbor,*
    2010 WL 2540094 (D.N.J. June 16, 2010) ......................................................... 15-16

*Tomaszewski v. City of Phila.,*
    460 F. Supp. 3d 577 (E.D. Pa. 2020) .....................................................................14

*U.S. v. Kouvei,*
    698 F.3d 126 (3d Cir. 2012)...................................................................................20

*Wax v. Trustees of Univ. of Pa.,*
    799 F. Supp. 3d 422 (E.D. Pa. 2025) ................................................................15, 17

*West v. Philadelphia Elec. Co.,*
    45 F.3d 744 (3d Cir. 1995).....................................................................................20

*Williams v. Carson Concrete Corp.,*
    No. CV 20-5569, 2021 WL 1546455 (E.D. Pa. Apr. 20, 2021) ..............................23

*Wormack v. Shinseki,*
    No. 2:09-cv-916, 2010 WL 2650430 (W.D. Pa. July 1, 2010).................................5

**Statutes**

43 P.S. § 959 ..................................................................................................................10

v

43 P.S. § 959(h) ..................................................................................................19

43 P.S. § 962 .....................................................................................................10

29 U.S.C. § 633(b) .............................................................................................22

29 U.S.C. § 636(d)(1) .................................................................................... 21-22

42 U.S.C. § 1981 ...........................................................................................*Passim*

42 U.S.C. § 2000e-5(b) ......................................................................................10

42 U.S.C. § 2000e-5(e)(1) ..................................................................................20

42 U.S.C. § 2000e-5(f)(1) ..................................................................................10

Administrative Procedure Act............................................................................21

Age Discrimination in Employment Act ...................................................... 9, 21-23

Title VII of the Civil Rights Act of 1964.......................................................*Passim*

Family and Medical Leave Act.............................................................................3

Pennsylvania Human Relations Act.................................................................*Passim*

**Other Authorities**

29 C.F.R. § 1601.13(a)(4)............................................................................. 21-22

Fed. R. Civ. P. 12(b)(6)................................................................................. 9-10

## I.  INTRODUCTION

Plaintiff, Mark Z. Sappir, is a former employee of Defendant UPMC Benefit Management Services, Inc. ("Workpartners").  In 2023, during his employment with Workpartners, Plaintiff sought a promotion to a Senior HR Director position with the Enterprises department of Defendant UPMC Presbyterian Shadyside[1] ("Enterprises"; incorrectly identified in the Complaint as "UPMC Enterprises").  As detailed in Plaintiff's Complaint (ECF No. 1), when he did not get the job, he attributed that decision—and other, subsequent decisions with which he disagreed—to alleged animus on the part of Workpartners and Enterprises (collectively, the "UPMC Defendants") based on his race (white), his sex (male), and his age (currently 73).  To that end, the Complaint purports to assert a grab-bag of discrimination and retaliation theories against the UPMC Defendants, including claims of race-, sex-, and age-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), and race discrimination under 42 U.S.C. § 1981 ("Section 1981").

The UPMC Defendants will address the full panoply of the Complaint's meritless claims in due course.  For now, however, they are raising its numerous pleading deficiencies, and the incurable failures to exhaust administrative remedies or to comply with the statutes of limitation with respect to certain claims.  Independently and collectively, these deficiencies warrant relief from the Court that will narrow the issues in this case by disposing of claims that should not proceed to discovery.

---

[1] "UPMC Enterprises" is not a legal entity, but rather, the name of a cost center within the entity UPMC Presbyterian Shadyside.

*First*, all of the Complaint's race discrimination claims should be dismissed, for multiple reasons. As a threshold matter, Plaintiff failed to exhaust administrative remedies as to his Title VII and PHRA race discrimination claim(s). None of the charges of discrimination he filed with the Equal Employment Opportunity Commission ("EEOC") asserted race discrimination claims. Thus, Plaintiff's Title VII and PHRA race discrimination claims should be dismissed for failure to satisfy this prerequisite to suit. Furthermore, the Complaint's allegations do not support any claim of race discrimination, instead merely concluding that Plaintiff was mistreated because he is white. The Court should dismiss these claims with prejudice and without leave to amend as to the Title VII and PHRA claims because there is no possible cure for the failure to exhaust.

*Second*, Plaintiff did not timely file claims based on his non-selection for a Senior HR Director position in August 2023. He did not file a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") or the EEOC related to that employment decision within the 180-day statutory limitation period. Because he did not initially institute the relevant charge of discrimination with the PHRC, he was not entitled to an extended, 300-day limitation period to file with the EEOC. Although there is an EEOC regulation that urges application of the 300-day limitation period in this context that some courts have previously upheld based on *Chevron* deference, that was before the Supreme Court's decision in *Loper Bright*. Because the unambiguous statutory language now controls, the Court should dismiss with prejudice as time-barred all claims in this action seeking to assert discrimination regarding Plaintiff's unsuccessful pursuit of the Senior HR Director position.

*Third*, the Complaint is defective to the extent it purports to assert claims against UPMC Defendants that, as its own allegations demonstrate, could not have been involved in the conduct it contends was wrongful. Specifically, Workpartners had no alleged role in Plaintiff's non-

2

selection for a Senior HR Director position with Enterprises. Similarly, Enterprises had no alleged role in his termination from Workpartners. And, neither had an alleged role in his alleged non-selection for other positions. The Court should dismiss all claims Plaintiff has improperly asserted against UPMC Defendants that facially cannot be responsible for the decision-making the Complaint describes.

*Fourth*, and finally, the Complaint's claims of retaliation based on Plaintiff's alleged failed applications for rehire are unsupported by any factual detail. Instead, the Complaint improperly asserts retaliation in blunderbuss, collective fashion, against *every* UPMC Defendant, without even alleging which of them he seeks to hold responsible for any particular hiring decision. These vague, conclusory allegations do not support any plausible retaliation claim.

Accordingly, as set forth below, the Court should dismiss the Complaint, except for its Third and Fourth Claims for Relief to the extent they assert age discrimination against Enterprises based on Plaintiff's non-selection for the Senior HR Director position, and its Fifth and Sixth Claims for Relief to the extent they assert retaliation against Workpartners based on Plaintiff's separation.

## II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[2]

### A.   The Parties and Plaintiff's Employment

Workpartners and Enterprises are subsidiaries of UPMC d/b/a the University of Pittsburgh Medical Center ("UPMC").[3] Compl. ¶¶ 18-19. Plaintiff was an employee of

---

[2] The UPMC Defendants accept the Complaint's allegations as true for purposes of this Motion only, without any admission, concession, or waiver with respect to those allegation(s).

[3] Plaintiff also has named UPMC as a defendant, but UPMC has not been served and, in any event, UPMC is not a proper party to this action because it did not employ Plaintiff. In fact, as this Court has found as a matter of law in a prior case, UPMC does not employ anyone. *See Colonna v. UPMC Hamot*, No. 1:16-CV-0053 (BJR), 2017 WL 4235937, at *6 (W.D. Pa. Sept. 25, 2017) (holding UPMC is not subject to the Family and Medical Leave Act and granting

Workpartners beginning in 2021.  *Id.* ¶¶ 55-57.  In July 2023, Plaintiff applied for the position of Senior HR Director for Enterprises.  *Id.* ¶¶ 7-8, 63.  Enterprises contracted with Defendant Diversified Search Group ("Diversified") to conduct a search for a Senior HR Director.  *Id.* ¶¶ 66, 105.  On August 8, 2023, Plaintiff was informed that he was not the successful candidate. *Id.* ¶¶ 8, 67-68.

"Of the three finalists" for the position, "all the selected candidates were women."  *Id.* ¶ 72.  Enterprises "selected a younger, less qualified woman for the Senior HR Director position" (*id.* ¶ 9), identified in the Complaint as "Julia M. Bennett (then age 49)."  *Id.* ¶ 74.  The Complaint does not allege Ms. Bennett's race or, for that matter, the race of any of the finalists.

The Complaint alleges that Judy Boreham, the Diversified employee who conducted a screening interview of Plaintiff, characterized him as not a "personality fit," which Plaintiff contends "was pretextual and referred to [his] failure to meet UPMC's preferred race, sex, and age criteria."  *Id.* ¶¶ 108-09.  Plaintiff further alleges Ms. Boreham noted that another candidate "liked DEI."  *Id.* ¶ 73.

"UPMC publicly emphasized its 'commitment to diversity, equity, and inclusion.'"  *Id.* ¶ 10.  Plaintiff claims that "UPMC required Diversified to 'build upon UPMC's Workforce Inclusion Strategy' in connection with the search" for an Enterprises Senior HR Director, including "mandat[ing] that Diversified present, before active recruitment, a strategic plan to include a 'diverse pool of candidates' and a copy of its 'internal diversity Strategy.'"  *Id.* ¶¶ 12-13.  Diversified allegedly represented that "'DEI is our mission, mandate, and methodology,' and

_____

summary judgment because, among other reasons, UPMC has "no employees").  This Motion is on behalf of Workpartners and Enterprises only.

. . . that 78% of [Diversified's] 2021-2022 placements were women and/or people of color, with only 22% of placements filled by men who were not people of color." *Id.* ¶ 99.

Plaintiff alleges that in December 2023 and April 2024 he complained internally that he believed the hiring process for the Senior HR Director position had not complied with applicable equal employment opportunity and antidiscrimination policies, among other purported concerns. *Id.* ¶¶ 79-90. Plaintiff does not allege that these alleged internal complaints identified any particular form of discrimination.

Plaintiff separated from Workpartners in April 2024 when his role was "eliminated as part of a system-wide reduction in force." *Id.* ¶ 91. After Plaintiff's separation, he applied and was not selected for unidentified positions with unidentified UPMC-related entities, which he concludes must be "retaliation for his prior complaints or because of the Defendants' continued illegal practice of preferring candidates based on protected characteristics." *Id.* ¶¶ 94-96.

### B.     Plaintiff's Administrative Charges of Discrimination

Beginning in June 2024, Plaintiff filed several charges of discrimination against Enterprises, Workpartners, and other entities, including Diversified, with the EEOC and the Pittsburgh Commission on Human Relations ("PghCHR").[4] *Id.* ¶ 31. Plaintiff alleges that he "has exhausted all administrative remedies." *Id.* ¶ 32. The following is a description of the content of each of the relevant charges against Enterprises and Workpartners, as reflected in the Complaint and in the charge documents[5] themselves.

---

[4] Plaintiff purported to dual-file all of his charges with the PHRC, but the EEOC transferred them for handling by the PghCHR pursuant to a work-sharing agreement.

[5] "[I]n the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges . . . without converting the motion to dismiss to a motion for summary judgment." *Wormack v. Shinseki*, No. 2:09-cv-916, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010).

1.    **June 3, 2024 Charges of Discrimination, Nos. 533-2024-02262 and 533-2024-02265**

On June 3, 2024, Plaintiff filed two identical Charges of Discrimination with the EEOC against Diversified and "UPMC, including Enterprises", asserting claims of discrimination based on sex and age, and retaliation.  Compl. ¶ 28.  Charge Nos. 533-2024-02262 and 533-2024-02265 (collectively the "June 3, 2024 Charges") are attached as Exhibit A.  Plaintiff checked boxes indicating he was asserting claims of discrimination based on "Sex" and "Age," and "Retaliation."  *Id.* at 1.  He did not check the box for "Race."  *Id.*

The June 3, 2024 Charges focus solely on Plaintiff's unsuccessful application for the Senior HR Director position in August 2023 and conclude, "[B]y denying [Plaintiff] the HR Senior Director Role and awarding it to [Julia] Bennet [sic], UPMC, UPMC Enterprises, and their agent Diversified discriminated against [Plaintiff] on the bases of his age (72) and gender (male)."  Ex. A at Attachment to EEOC Charge, 3, ¶ 23.  They do not allege that Plaintiff was denied the Senior HR Director position because of his race.  *Id.*

2.    **July 3, 2024 Charges of Discrimination, Nos. 533-2024-02451 and 533-2024-02452**

On July 3, 2024, Plaintiff filed two identical charges of discrimination with the EEOC against Workpartners, asserting claims of discrimination based on sex and age, and retaliation.  Compl. ¶ 29.  Charge Nos. 533-2024-02451 and 533-2024-02452 (collectively the "July 3, 2024 Charges") are attached as Exhibit B.[6]  Plaintiff checked boxes indicating he was asserting claims

---

[6] Each received its own unique charge number, and the EEOC delivered both without including the charge number on the face of either document.  The documents attached as Exhibit B are in the form that Workpartners received Charge Nos. 533-2024-02451 and 533-2024-02452 from the EEOC.  The UPMC Defendants do not expect Plaintiff will dispute that these charges are the ones to which he refers in the Complaint.

6

of discrimination based on "Sex" and "Age," and "Retaliation." *Id.* at 1.  He did not check the box for "Race" or any other box.  *Id.*

The July 3, 2024 Charges discuss Plaintiff's alleged internal complaints that he was not selected for the Senior HR Director position because of his "gender," concluding that "[Plaintiff] was unlawfully separated from UPMC (a) in retaliation for his complaints of gender discrimination, and (b) due to his age and/or gender." *Id.* at Attachment to EEOC Charge, ¶¶ 25-26, 30, 35-37.  They do not allege that Plaintiff was terminated because of his race.  *Id.*

### 3.    May 12, 2025 Charge of Discrimination, No. 533-2025-02182

On May 12, 2025, Plaintiff filed a charge with the EEOC against "UPMC," asserting only a claim of retaliation.  Compl. ¶ 31.  Charge No. 533-2025-02182 (the "May 12, 2025 Charge") is attached as Exhibit C.[7]  Plaintiff checked the box indicating he was asserting "Retaliation" but did not check the box for "Race" or for any other type of discrimination.

The attachment to the May 12, 2025 Charge details eight unsuccessful applications for employment Plaintiff submitted after separating from Workpartners and concludes, "UPMC denied all of his applications in retaliation for: (a) his protected activity prior to his termination, and (b) his subsequent filing of multiple EEOC charges related to the unlawful denial of his application for the HR Director role and his termination." *Id.* at Attachment to EEOC Charge, ¶ 32.  It does not allege that Plaintiff's post-separation applications were denied because of his race.  *Id.*

Plaintiff alleges that the May 12, 2025 Charge "explicitly invoked race alongside sex and retaliation theories, relying on materials and statements suggesting bias against 'white males.'" Compl. ¶ 31.  The phrase "white males" appears once in the May 12, 2025 Charge, which quotes

---

[7] Plaintiff erroneously dated the May 12, 2025 Charge "5/11/2022."

from and characterizes content from Diversified's website. Ex. C at Attachment to EEOC

Charge, ¶ 10. Specifically, the May 12, 2025 Charge states, in relevant part:

> At the time [of the Senior HR Director search], Diversified held itself out as a firm founded "with the purposes of bringing unheard voices and perspectives to the leadership table." In furtherance of this mission, Diversified stated on its website that it "continue[s] to open up opportunities in leadership for. . . groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors"—i.e., not white males like [Plaintiff].

*Id.* The May 12, 2025 Charge includes as exhibits this and other portions of Diversified's

website. *Id.* ¶¶ 10-12, Exs. B-D.

### 4.    The Right-to-Sue Letters

Plaintiff received EEOC right-to-sue letters for the June 3, 2024 Charges, July 3, 2024

Charges and May 12, 2025 Charge. Compl. ¶¶ 34-35, Exs. 2-6. He also received PghCHR right-

to-sue letters for the June 3, 2024 Charges and July 3, 2024 Charges. *Id.* ¶¶ 39-42, Exs. 7-10.[8]

### C.    The Complaint

For the first time, the Complaint contends that the UPMC Defendants discriminated

against Plaintiff "on the basis of race." *Id.* ¶¶ 2, 117, 126-27. Specifically, the Complaint

alleges that the UPMC Defendants treated Plaintiff less favorably than non-white candidates

when he was rejected for the Senior HR Director position in 2023 and then did not select him for

a series of other positions following his 2024 separation. *Id.* ¶¶ 94-96, 126-27. The Complaint

does not state directly that it attributes Plaintiff's April 2024 separation to his race, but one

paragraph suggests it may contend as much. *See id.* ¶ 2 ("Plaintiff asserts claims for

discrimination on the basis of race . . . arising from . . . his termination in April 2024 after he

opposed and reported discrimination[.]"). It also asserts claims of sex and age discrimination

---

[8] The EEOC referred these charges to the PghCHR during July and August 2024.

based on his non-selection for the Senior HR Director (*id.* ¶¶ 2, 113-21, 131-37, 140), and retaliation based on his separation and unsuccessful post-separation applications (*id.* ¶¶ 2, 94-96, 145-55).

The Complaint contains the following six "Claims for Relief":

(1)   *First Claim for Relief* – race and sex discrimination under Title VII (*id.* ¶¶ 113-21);

(2)   *Second Claim for Relief* – race discrimination in contracting under Section 1981 (*id.* ¶¶ 122-30);

(3)   *Third Claim for Relief* – age discrimination under the Age Discrimination in Employment Act ("ADEA") (*id.* ¶¶ 131-37);

(4)   *Fourth Claim for Relief* – race, sex, and age discrimination under the PHRA (*id.* ¶¶ 138-44);

(5)   *Fifth Claim for Relief* – retaliation under the PHRA (*id.* ¶¶ 145-50); and

(6)   *Sixth Claim for Relief* – retaliation under Title VII (*id.* ¶¶ 151-55).

The Complaint asserts every Claim for Relief against all Defendants without any individualized discussion of why each Claim for Relief is appropriate as to any particular Defendant.  *Id.*

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  To survive such a motion, the plaintiff must present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  A complaint or part thereof should be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Stating a plausible claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation

9

omitted).  Moreover, the court need not accept legal conclusions "disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  And a plaintiff's "alleged failure to exhaust his administrative remedies is properly considered under Rule 12(b)(6)." *Brentley v. City of Pittsburgh*, No. CV 20-489, 2023 WL 8004926, at \*4 n.9 (W.D. Pa. Nov. 17, 2023), *aff'd*, No. 23-3203, 2024 WL 4691077 (3d Cir. Nov. 6, 2024) (citation omitted).

## IV.    ARGUMENT

### A.    The Complaint's Race Discrimination Claims Should Be Dismissed With Prejudice.

The Complaint's race discrimination claims fail as a matter of law for two reasons.  First, Plaintiff has not exhausted administrative remedies as to his Title VII and PHRA race discrimination claims, as he must before bringing them in court.  Plaintiff's administrative charges asserted other types of discrimination and/or retaliation, *not* discrimination based on race.  Second, and independently, these claims—along with his Section 1981 race discrimination claim—are deficient because he has not alleged facts sufficient to establish a claim of race discrimination.  Accordingly, the Court should dismiss Plaintiff's race discrimination claims in the First, Second, and Fourth Claims for Relief.

#### 1.    Plaintiff Failed to Exhaust Administrative Remedies as to His Title VII and PHRA Race Discrimination Claims.

The Complaint purports to assert Title VII and PHRA race discrimination claims, but Plaintiff did not assert such claims in *any* of his administrative charges.  Accordingly, those claims in the First and Fourth Claims for Relief are barred due to Plaintiff's failure to exhaust administrative remedies.

Under Title VII and the PHRA, exhaustion of administrative remedies is a prerequisite to any lawsuit.  42 U.S.C. § 2000e-5(b), (f)(1); 43 P.S. §§ 959, 962; *see also Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("Both [Title VII and the PHRA] . . .

10

establish administrative remedies and procedures that claimants must exhaust prior to bringing a civil action in court."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1214 (Pa. Super. 1999) ("Under the PHRA and Title VII, it is well-settled that a plaintiff must exhaust all administrative remedies prior to seeking redress in court.") (citation omitted).  To exhaust administrative remedies under both statutes, a claimant must file a charge of discrimination with the PHRC (or a local equivalent, such as the PghCHR, *Davis v. U.S. Steel Supply*, 581 F.2d 335, 339 (3d Cir. 1978)) as to any state claims, and with the EEOC as to any federal claims.  *Burgh*, 251 F.3d at 469, 471.

"The critical inquiry for determining exhaustion is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Bragg v. Eat N Park Hosp. Grp., Inc.*, No. 2:25-CV-00813-CB, 2026 WL 1282738, at *2 (W.D. Pa. May 11, 2026) (Bissoon, C.J.) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)) (internal quotation marks and other citation omitted).  A claim is exhausted only "when the specifics of a charge with the administrative agency 'fairly encompass a claim' and would put the agency and the defendant employer 'on notice' of that claim." *Miller v. City Mission*, No. 2:23-CV-834, 2023 WL 9002732, at *3 (W.D. Pa. Dec. 28, 2023) (quoting *Mammen v. Thomas Jefferson Univ.*, 462 F. Supp. 3d 518, 529 (E.D. Pa. 2020)).

In *Miller*, for example, this Court dismissed race discrimination claims for failure to exhaust where the plaintiff checked only "Sex" and "Retaliation" and not "Race" on her EEOC charge. *Id.* The plaintiff argued that her reference to filing a complaint with the National Association for the Advancement of Colored People ("NAACP") in the charge narrative was "enough to infer that she properly exhausted her administrative remedies for race discrimination." *Id.* at *3. The Court rejected that argument, reasoning that "NAACP complaints are not exclusive to racial complaints" and the plaintiff "could have checked the box for 'Race'

11

on her EEOC Charge or have been more specific in describing her claims in the Charge, but she did not do so." *Id.* Therefore, her race discrimination claim was "not within the scope of her EEOC Charge." *Id.* Similarly, in *Browm v. Envoy Air Inc.*, this Court dismissed race discrimination claims under Title VII and the PHRA where the plaintiff checked only the "Religion" box on his EEOC charge. No. 14–383, 2014 WL 6682540, at *4 (W.D. Pa. Nov. 25, 2014). And in *Bragg*, this Court determined that a plaintiff asserting retaliation who used that word in his EEOC charge but did not describe any alleged facts to support such a claim could not "reasonably argue that he put Defendant on notice of his retaliation claim by simply using the word 'retaliation' in his charge without more." 2026 WL 1282738, at *2.

Here, as in *Miller* and *Browm*, Plaintiff did not check the "Race" box on *any* of his EEOC charges, nor do any of the charges allege facts to support a claim of race discrimination. *See* Exs. A-C. Similar to *Bragg*, though he mentioned that he was white, Plaintiff otherwise provided no discussion of alleged differential treatment on such a basis. *See id.* For that reason, the EEOC and the UPMC Defendants were not on notice of any race discrimination claim, and no such claim would fairly be within the scope of any of the charges or the EEOC's investigation thereof. Thus, Plaintiff has not administratively exhausted any such claims. *Miller*, 2023 WL 9002732, at *3; *Browm*, 2014 WL 6682540, at *2; *Bragg*, 2026 WL 1282738, at *2.

The only place where the Complaint alleges that one of Plaintiff's charges mentioned race was in his May 12, 2025 Charge that allegedly "explicitly invoked race alongside sex and retaliation theories, relying on materials and statements suggesting bias against 'white males.'" Compl. ¶ 31. But the May 12, 2025 Charge does not support this contention. The only reference to "white males" in the May 12, 2025 Charge is not a quote from any "materials and statements" but a description Plaintiff applies to content on Diversified's website. Ex. C at Attachment to

12

EEOC Charge, ¶ 10.  The underlying "materials and statements" quoted by Plaintiff merely say that Diversified "continue[s] to open up opportunities in leadership for . . . groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors." *Id.* The leap from referencing "white males" to a race discrimination claim is much further than the leap from referencing an NAACP complaint to a race discrimination claim, which the plaintiff urged, and this Court rejected, in *Miller*, 2023 WL 9002732, at *3.

There is no reasonable interpretation of the May 12, 2025 Charge that would cause the EEOC to understand that Plaintiff wished to pursue a race discrimination claim.  Accordingly, the Complaint's First and Fourth Claims for Relief must be dismissed with prejudice to the extent they allege claims of race discrimination under Title VII and the PHRA.

Further, because he did not exhaust administrative remedies as to his race discrimination claims under Title VII and the PHRA, Plaintiff cannot cure the deficiencies of those claims, and the Court should not permit him to amend the Complaint to attempt to do so.  *See Bragg*, 2026 WL 1282738, at *2 (Bissoon, C.J.) (dismissing with prejudice non-exhausted claim because "amendment of the Complaint would be futile"); *Miller*, 2023 WL 9002732, at *3 (same); *Browm*, 2014 WL 6682540 at *4 (same).  The Court should dismiss those claims with prejudice.

### 2.        The Complaint Fails to State Any Claim of Race Discrimination.

Independent of the failure to exhaust administrative remedies that is fatal to his Title VII and PHRA race discrimination claims, Plaintiff fails as a matter of law to allege facts sufficient to state *any* claim of race discrimination under those statutes and Section 1981.  To do so, a "'plaintiff must first carry the initial burden of establishing a *prima facie* case of discrimination.'"  *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 648 (E.D. Pa. 2021) (quoting

13

*Norman v. Kmart Corp.*, 485 F. App'x 591, 592 (3d Cir. 2012)).[9]  To establish a *prima facie* case, Plaintiff must show he "(1) belongs to a protected class; (2) was qualified for the position at issue; (3) was subject to an adverse employment action despite being qualified; and (4) the action occurred under circumstances that raise an inference of discriminatory action, such as by showing that similarly situated employees who are not members of the same protected class were treated more favorably under similar circumstances."  *Smith v. DeJoy*, No. CV 21-706, 2022 WL 16950447, at *3 (W.D. Pa. Nov. 15, 2022) (citations omitted).[10]

As discussed below, Plaintiff fails to plead facts sufficient to establish the fourth element of a *prima facie* case of race discrimination with respect to *any* alleged adverse action he claims to have suffered.  Therefore, the Court should dismiss his Title VII, PHRA, and Section 1981 race discrimination claims.

> **a.    The Complaint Fails to State a Race Discrimination Claim Based on Plaintiff's Non-Selection for the Senior HR Director Position in August 2023.**

The Complaint alleges in conclusory fashion that "Defendants discriminated against [Plaintiff] on the basis of race and sex by denying him advancement and selection for the Senior HR Director position and by otherwise treating him less favorably than similarly qualified candidates outside his protected classes during recruitment, screening, and selection, including

---

[9] "Courts apply the same burden-shifting framework to discrimination claims asserted under Title VII, the PHRA, . . . [and] § 1981[.]"  *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 593 (E.D. Pa. 2020) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)).

[10] "Race-based employment discrimination claims brought under section 1981 and Title VII are evaluated in the same way because 'the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII.'"  *McGarrigle v. Cristo Rey Philadelphia High Sch.*, No. CV 22-4713, 2023 WL 2975870, at *8 n. 40 (E.D. Pa. Apr. 17, 2023) (quoting *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181–82 (3d Cir. 2009)).

advancing only female finalists and selecting a female candidate." Compl. ¶ 117. But the Complaint contains no *factual* allegations that could support a *legal* conclusion of race discrimination.

The Complaint does not identify the race(s) of any other candidate(s) interviewed for the Senior HR Director position, nor does it even identify the race of Julia Bennett, the individual hired for the position. Instead, Plaintiff identifies only the *sex* of the other candidates and the *age and sex* of Ms. Bennett. *See*, *e.g.*, Compl. ¶¶ 9, 72, 74-75. With no allegation about the race(s) of any purported comparator(s), there is no basis for an inference that Plaintiff's non-selection was motivated by his race. *See*, *e.g.*, *Wax v. Trustees of Univ. of Pa.*, 799 F. Supp. 3d 422, 433 (E.D. Pa. 2025) (granting motion to dismiss because white plaintiff's conclusory allegations that other, nonwhite and non-Jewish employees were treated more favorably were insufficient to state any race discrimination claim where plaintiff did "not identify the race of the alleged comparators").[11]

Nor does the Complaint contain any other allegation, such as race-based statements or conduct by any decision-maker, sufficient to establish that Plaintiff was not hired for the Senior HR Director position because he is white. The only allegation that even addresses what occurred in the selection process is that Judy Boreham of Diversified, who interviewed Plaintiff, characterized Plaintiff as not a "personality fit" (Compl. ¶ 108) and noted that another alleged candidate "liked DEI" (*id.* ¶ 73). The Complaint nevertheless concludes the "personality fit"

---

[11] *See also Hassell v. Johnson & Johnson*, No. 13-CV-4109 JAP, 2014 WL 1744266, at *4 (D.N.J. May 1, 2014) ("Failing to allege facts surrounding the race of those employees that were promoted over Plaintiff hardly makes it plausible that circumstances of discrimination were present."); *Tavarez v. Twp. of Egg Harbor*, 2010 WL 2540094, at *4 (D.N.J. June 16, 2010) (noting "the Complaint does not identify the race or ethnicity of the police officers who were promoted to captain ahead of [Plaintiff]," and concluding that "[t]he Complaint only states a legal conclusion that the failure to promote [Plaintiff] was discrimination on the basis of race").

characterization "was pretextual and referred to [Plaintiff's] failure to meet UPMC's preferred race, sex, and age criteria" (*id.* ¶ 109) and suggests that the "liked DEI" comment evinces a "need or preference of diversity." *Id.* ¶ 73. These allegations are "precisely the legal conclusions and labels that *Twombly* has made clear are insufficient to allow a cause of action to proceed." *Tavarez*, 2010 WL 2540094, at *4.

Instead, the Complaint insinuates more generally that alleged DEI policies or plans raise an inference that Plaintiff was subject to race discrimination. It cites alleged public statements by "UPMC" about a general "commitment to diversity, equity, and inclusion" (Compl. ¶ 10) and claims that "UPMC required Diversified to 'build upon UPMC's Workforce Inclusion Strategy' in connection with the search" for the Enterprises Senior HR Director (*id.* ¶ 12), including "mandat[ing] that Diversified present, before active recruitment, a strategic plan to include a 'diverse pool of candidates' and a copy of its 'internal diversity Strategy.'" *Id.* ¶ 13.

These allegations, too, fail to create any inference of race discrimination. *See*, *e.g.*, *Dzibela v. BlackRock Inc.*, No. 23-02093 (RK) (JBD), 2024 WL 4349813, at *7 (D.N.J. Sept. 20, 2024) (dismissing Title VII discrimination claims, holding that conclusory allegations regarding defendant's DEI policies and "Plaintiff's subjective belief that he was replaced by multiple unqualified individuals who better fit Defendants' DEI policy preferences" were not sufficient to create an inference of discrimination). Courts thus have held repeatedly that allegations of an employer's diversity policy, without more, cannot support a *prima facie* case of discrimination. *See*, *e.g.*, *Han v. Temple Univ.*, 807 F. Supp. 3d 442, 460 (E.D. Pa. 2025) (holding that "a hiring policy that seeks to increase diversity in the workplace is not, in and of itself, sufficient to establish a prima facie case of illegal discrimination"); *Mangold v. PECO Energy*, No. 19-5912, 2021 WL 6072818, *17 (E.D. Pa. Dec. 23, 2021) (granting summary as to white male plaintiff's

16

race discrimination claims, holding that the "mere existence of Defendant's company-wide initiative to increase diversity" does not support a "broad, and otherwise unsubstantiated leap" that such an initiative was the "catalyst" for alleged discrimination).

Finally, the Complaint attempts to rely on "UPMC's and Diversified's DEI Positioning," consisting of UPMC's alleged professed commitment to diversity, equity and inclusion and its receipt of a gender equity award, as well as blended race and gender data regarding Diversified's workforce and its placements, all without any factual connection to Plaintiff's failed candidacy for the Senior HR Director position. *See* Compl. ¶¶ 97-100. Generalized statements regarding DEI, the receipt of a *gender* equity award, and a recruitment firm's workforce and candidate placement demographics do not suffice to raise an inference of race discrimination by any UPMC Defendant. *See*, *e.g.*, *Dzibela*, 2024 WL 4349813, at *7 (finding insufficient alleged existence of "DEI preferences" plus plaintiff's subjective belief as to such preferences).

"Conclusory statements are not substitutes for facts. Subjective beliefs are not facts." *Wax*, 799 F. Supp. 3d at 434 (dismissing race discrimination claims where plaintiff failed to identify valid comparators and "include[d] no other factual assertions supporting her claim that she was disciplined because she was White and Jewish"); *see also Brentley v. City of Pittsburgh*, No. 2:20-cv-00489, 2023 WL 8004926, at *5 (W.D. Pa. Nov. 17, 2023) (dismissing race discrimination claim based on the plaintiff's "generally alleged belief that 'because he is African American, he has not been treated the same in promotion and discipline as his white counterpart,'" determining the belief was "either speculative [or] conclusory" and thus "devoid of any showing of a plausible claim for race discrimination"), *aff'd*, No. 23-3203, 2024 WL 4691077 (3d Cir. Nov. 6, 2024). The Complaint does not "allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'"

17

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).  Thus, the Court should dismiss the Complaint's race discrimination claims based on Plaintiff's non-selection for the Senior HR Director position.

> **b.**     **The Complaint Fails to State Any Claim of Race Discrimination Based on Plaintiff's Separation or His Non-Selection for Positions to Which He Applied Post-Separation.**

The Complaint also does not allege facts sufficient to support any conclusion that race played a role in Plaintiff's separation from Workpartners in April 2024 as part of an organization-wide reduction in force, or in any of Plaintiff's post-separation applications for employment.  Compl. ¶¶ 91-96.  While it is not clear from the Complaint whether Plaintiff seeks to assert such race discrimination claims,[12] to the extent he does, they should be dismissed.

The Complaint contains no factual allegations regarding Plaintiff's separation, other than that he was informed on April 24, 2024 "that his role would be eliminated as part of a system-wide reduction-in-force."  *Id.* ¶ 91.  Among other things, Plaintiff makes no factual allegations regarding the race(s) of any similarly situated employees who were not selected.  Nor does he claim that any UPMC Defendant hired someone of a different race for any of the positions for which he applied post-separation or otherwise make any allegation about the circumstances of

---

[12] While the Complaint appears to allege only a retaliation claim based on Plaintiff's April 2024 separation, it contains one paragraph hinting at a theory that the separation may have been motivated by race: Plaintiff says that he "asserts claims for discrimination on the basis of race, age, and sex, as well as retaliation, arising from: . . . his termination in April 2024 after he opposed and reported discrimination[.]"  Compl. ¶ 2.  The Complaint also contains conclusory allegations that Plaintiff's applications for reemployment were unsuccessful because of his race. *See id.* ¶¶ 96 (alleging Plaintiff "was rejected . . . because of the Defendants' continued illegal practice of preferring candidates based on protected characteristics"), 127 ("Defendants intentionally discriminated against Plaintiff on the basis of race (white) by. . . denying him selection for eight additional positions after he was terminated.").

18

those hiring decisions that would support an inference of race discrimination.[13]  Therefore, to the extent Plaintiff seeks to assert race discrimination claims based on his separation or his unsuccessful post-separation applications, the Court should dismiss any such claim(s).

**B.      All PHRA and Title VII Claims Based on Plaintiff's Unsuccessful Candidacy for the Senior HR Director Position in August 2023 Are Time-Barred.**

Plaintiff did not file any charge of discrimination as to claims based on his non-selection for Senior HR Director in August 2023, with the PHRC, the EEOC, or any appropriate local agency, within the statutorily mandated 180-day period.  Thus, the Complaint's sex discrimination claims and (to the extent not otherwise dismissed) race discrimination claims are time-barred to the extent based on such non-selection and should be dismissed with prejudice.

**1.      Plaintiff Did Not Timely File a PHRA Claim Based on His Non-Selection for the Senior HR Director Position in August 2023.**

None of Plaintiff's PHRA claims based on the hiring of another candidate for the Senior HR Director position in August 2023 were timely filed.  To pursue remedies under the PHRA, a claimant must file a charge of discrimination with the PHRC or a local agency within 180 days of the last discriminatory act.  43 P.S. § 959(h).  Plaintiff did not make the necessary submission until June 3, 2024, 300 days after August 8, 2023, the date on which the Complaint alleges Enterprises informed him of his non-selection for the Senior HR Director position.  Compl. ¶¶ 27-28; *see* Ex. A.  Therefore, any PHRA claim based on the August 2023 employment decision is time-barred.  The Court should dismiss all of the Complaint's PHRA claims with prejudice to the extent they are based on Plaintiff's rejection for the Senior HR Director position.

---

[13] For the reasons discussed *supra*, Plaintiff's misleading references to alleged "bias against 'white males'" (Compl. ¶ 31) furnish no support for such a claim.

### 2.     Plaintiff Did Not Timely File Any Title VII Claims Based on His Non-Selection for the Senior HR Director Position in August 2023.

Plaintiff's Title VII claims based on his non-selection for the Senior HR Director position are time-barred because he did not timely file an administrative charge as to those claims.  The plain language of Title VII gives a claimant 180 days after the occurrence of an allegedly unlawful employment practice, with only a limited "except[ion]" extending this period to 300 days where "the person aggrieved has *initially instituted* proceedings with a State or local agency with authority to grant or seek relief" from the practice at issue.  42 U.S.C. § 2000e-5(e)(1) (emphasis added).  Plaintiff instituted proceedings *with the EEOC* on June 3, 2024, exactly 300 days after the relevant employment decision.  Ex. A.  He also purported to dual-file the June 3, 2024 Charges with the PHRC at the same time, but he could not initially institute them at that point with a state or local agency with authority to grant or seek relief because, as discussed above, his PHRA claims were clearly time-barred under the strict 180-day statutory deadline for claims brought under the state law.  Accordingly, Plaintiff was required to file a charge with the EEOC within *180 days*, not 300.  42 U.S.C. § 2000e-5(e)(1); *see West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 n.8 (3d Cir. 1995) (internal citations omitted) ("The 300-day period applies where the plaintiff has initially instituted proceedings with a State or local agency. Otherwise, the applicable period is 180 days.").

The relevant text of Title VII is unambiguous and compels this result.  This Court has a "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and citations omitted); *U.S. v. Kouvei*, 698 F.3d 126, 133-34 (3d Cir. 2012) (rejecting interpretation of statutory provision that would "transform" it "into surplusage").  Applying the 300-day period and accepting the June 3, 2024 Charges as timely even though Plaintiff did not "initially institute[] them with a State or local agency with

20

authority to grant or seek relief" would fail to give effect to a key provision of Title VII.

The UPMC Defendants acknowledge the EEOC has issued a regulation that appears to apply the 300-day period in any case where a state agency enforces antidiscrimination laws, 29 C.F.R. § 1601.13(a)(4), and that district courts in the Third Circuit frequently have given Title VII plaintiffs 300 days without their having initially instituted a timely PHRC or equivalent state or local agency charge.[14] But those decisions largely arose under a jurisprudential framework in which courts were required to defer to the EEOC's interpretation of Title VII under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 468 U.S. 837 (1984).

*Chevron* no longer controls statutory interpretation in the agency context.[15] Rather, as the Supreme Court recently held in *Loper Bright Enterprises v. Raimondo*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. 369, 412 (2024). "[C]ourts need not and under the [Administrative Procedure Act] *may not* defer to an agency interpretation of the law." *Id.* at 413 (emphasis added). And, even before *Loper Bright*, the Supreme Court held that the EEOC's

---

[14] Many, though admittedly not all, of those decisions also cite to authority regarding the ADEA, whose timeliness provisions differ from Title VII's. *See*, *e.g.*, *Gharzouzi v. Northwestern Human Servs. of Pa.*, 225 F. Supp. 2d 514, 521 (E.D. Pa. 2002) (holding, in ADEA case, that, "in a 'deferral state' like Pennsylvania, . . . the plaintiff has not 180 but 300 days from the date of the alleged unlawful employment practice to file his/her charge of discrimination with the EEOC") (citation omitted). The ADEA simply gives a claimant 300 days to file a charge in certain circumstances. 29 U.S.C. §§ 636(d)(1). It does not require that the claimant "initially institute[]" the charge in a state or local agency, like Title VII does. *Id.*

[15] At least one court in this Circuit has declined to apply *Loper Bright* in this context as to 29 C.F.R. § 1601.13(a)(4). *Glover v. SpiriTrust Lutheran*, No. 1:24-CV-1561, 2025 WL 1523005, at *4 (M.D. Pa. May 28, 2025). The *Glover* court did so, however, based on a mistaken interpretation of a 1983 decision in which the Third Circuit hypothesized in dicta that, under different facts not present in that case, the Title VII plaintiff's claim would have been timely. *Id.* (citing *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748 (3d Cir. 1983)). Neither the non-binding determination of *Glover*, which conspicuously left open any *Loper Bright* analysis, nor the dicta from *Kocian* disposes of the timeliness question here.

21

"'interpretation' of the statute cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). Accordingly, any interpretation that would give Plaintiff the extended, 300-day period is directly at odds with the plain statutory language of Title VII and not entitled to deference.[16]

Plaintiff did not initially institute his Title VII claims based on his non-selection for the Senior HR Director position with a state or local agency within 180 days after August 8, 2023, the date he was informed his candidacy was unsuccessful. Compl. ¶ 67. Therefore, the Court should dismiss those claims with prejudice as time-barred.

### C.    The Complaint Includes Facially Implausible Claims Against Certain UPMC Defendants That the Court Should Dismiss.

The Complaint has failed to state certain claims against UPMC Defendants that—based on its own allegations regarding each entity—do not allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The Court should dismiss all such claims, as follows.

First, the Complaint alleges that Enterprises, *not Workpartners*, was the hiring entity for the Senior HR Director position Plaintiff claims he was denied because of his race, sex, and age. Compl. ¶¶ 6-7, 21, 63-64, 69, 72, 78. Therefore, it is facially implausible that Workpartners discriminated against Plaintiff in connection with his unsuccessful bid for that position. The Court should dismiss all discrimination claims against Workpartners under Title VII, Section

---

[16] The EEOC regulation cannot withstand this Court's independent judgment. The purpose of 29 C.F.R. § 1601.13(a)(4) was to codify the Supreme Court's holding in *Oscar Mayer Co. v. Evans*, 441 U.S. 750 (1979), that the EEOC may defer *an ADEA claim* to a state agency even if that state's limitation period has expired. *Seredinski v. Clifton Precision Prods. Co., Div. of Litton Sys., Inc.*, 776 F.2d 56, 62 (3d Cir. 1985). The ADEA's timing provisions differ from Title VII's and, crucially, do not include the phrase "initially instituted." 29 U.S.C. §§ 636(d)(1), 633(b).

22

1981, the ADEA, and the PHRA (the Complaint's First through Fourth Claims for Relief) based on allegations about his non-selection for Senior HR Director role.

Second, the Complaint alleges that Workpartners, *not Enterprises*, was Plaintiff's employer and the entity that terminated his employment, which he claims was retaliatory. Compl. ¶¶ 19-20, 54-55, 57-58, 62, 91. Therefore, it is facially implausible that Enterprises allegedly retaliated against Plaintiff in connection with his separation. The Court should dismiss all retaliation claims against Enterprises (the Complaint's Fifth and Sixth Claims for Relief) based on Plaintiff's separation.[17]

Third, the Complaint does not allege that *any* of the eight positions for which Plaintiff applied post-separation, his non-selection for which he calls retaliatory, would have been positions with *either Workpartners or Enterprises*. Compl. ¶¶ 94-96. Therefore, it is facially implausible that any decision of Workpartners and/or Enterprises resulted in Plaintiff's non-selection, much less constituted retaliation. The Court should dismiss all retaliation claims against Workpartners and Enterprises (the Complaint's Fifth and Sixth Claims for Relief) based on Plaintiff's unsuccessful post-separation applications.

These claims fail because the Complaint alleges no facts to support any inference that the UPMC Defendant(s) described above could possibly have wronged him. *See, e.g.*, *Williams v. Carson Concrete Corp.*, No. CV 20-5569, 2021 WL 1546455, at \*5 (E.D. Pa. Apr. 20, 2021) (dismissing claims against co-defendant of prospective employer because plaintiff did "not allege that he attempted to apply for an employment position with [co-defendant], or that he was denied employment by" co-defendant). The Court should dismiss these claims.

---

[17] Plaintiff also did not assert separation-based claims against Enterprises in the July 3, 2024 Charges. *See* Ex. B at 1 (asserting claims only against Workpartners). The Complaint's separation-based claims as to Enterprises thus are barred for failure to exhaust as well.

**D.**     **The Complaint's Allegations Based on Plaintiff's Unsuccessful Post-Separation Applications Are Too Vague and Conclusory to State a Retaliation Claim.**

The Complaint's claims of retaliation related to Plaintiff's alleged post-separation applications for employment also fail as a matter of law. The Complaint alleges he applied for eight positions following his separation, and that the denial of every one of those applications was retaliatory. But it does not even say with what UPMC Defendant (if any) he was seeking employment, what any of the positions were, which UPMC Defendant or representative thereof made a decision not to hire him for it, or how any such decision was retaliatory. Instead, the Complaint simply makes a blanket assertion that the denials were "because of the Defendants' continued illegal practice of preferring candidates based on protected characteristics." *Id.* ¶ 96.

These "factual allegations are far too vague and generalized to state a retaliation claim against any named Defendant." *Fullman v. City of Phila.*, No. 24-CV-0682, 2025 WL 2825586, at *11 (E.D. Pa. Oct. 2, 2025) (dismissing retaliation claim where plaintiff "collectively refer[red] to" all defendants and alleged broadly that they took actions "'for retaliatory reasons' without clarifying the specific basis for any individual Defendant's liability"). In particular, the Complaint's failure to explain what positions Plaintiff applied for, which entity allegedly did not hire him for any of the eight positions, or why Plaintiff believes such entity did not hire him for a retaliatory reason, renders all of these claims implausible and thus defective.[18]  *See, e.g., Lawal v. McDonald*, 546 F. App'x 107, 113-14 (3d Cir. 2014) (affirming dismissal of complaint where

---

[18] Plaintiff's single, conclusory allegation that "UPMC is liable as an integrated enterprise and/or joint employer with its affiliates," Compl. ¶ 17, does not suffice to explain how *all* UPMC Defendants allegedly retaliated against him. *See, e.g., Lopez v. Lancaster Farm Fresh Organics, LLC*, No. 5:21-CV-01862, 2021 WL 3884296, at *5 (E.D. Pa. Aug. 31, 2021) ("In the absence of factual support, the broad and conclusory assertions [that codefendants] are 'intertwined and constitute joint employers' are insufficient to state a claim or warrant discovery.").

24

plaintiff's "repeated and collective use of the word 'Defendants'" raised "a serious question as to whether it [was] plausible that each of the three defendants committed all of the acts ascribed to them"). The Court should dismiss these claims.

## V.    CONCLUSION

For the above reasons, the UPMC Defendants respectfully request that the Court dismiss the Complaint's:

(1)    First and Fourth Claims for Relief to the extent they assert claims of race discrimination under Title VII and the PHRA;

(2)    Second Claim for Relief, in its entirety;

(3)    First and Fourth Claims for Relief to the extent they assert claims of race and sex discrimination based on a failure to hire Plaintiff into a Senior HR Director role in August 2023;

(4)    First, Second, Third, and Fourth Claims for Relief to the extent they assert claims of discrimination against Defendant UPMC Benefit Management Services, Inc. based on non-selection of Plaintiff for a Senior HR Director role in August 2023;

(5)    Fifth and Sixth Claims for Relief to the extent they assert claims of retaliation against Defendant UPMC Presbyterian Shadyside based on Plaintiff's separation in April 2024; and

(6)    Fifth and Sixth Claims for Relief to the extent they assert claims of retaliation against any UPMC Defendant based on Plaintiff's unsuccessful post-separation applications for employment.

Respectfully submitted,

/s/ Adam D. Brown
William M. McSwain, Esquire (admitted *pro hac vice*)
Christopher D. Durham, Esquire
Adam D. Brown, Esquire (admitted *pro hac vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1166/1510/1883

*Attorneys for Defendants UPMC Presbyterian Shadyside (incorrectly identified in the Complaint as "UPMC Enterprises") and UPMC Benefit Management Services, Inc.*

Dated:  June 29, 2026

# Exhibit A

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | 533-2024-02262 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>Mark Z. Sappir | Home Phone *(Incl. Area Code)*<br>(267) 664-3846 | Date of Birth<br>04/16/1952 |
|---|---|---|

Street Address                    City, State and ZIP Code

215 Overlook Drive, McMurray,PA  15317

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Diversified Search Group | No. Employees, Members<br>200+ | Phone No. *(Include Area Code)*<br>(215) 732-6666 |
|---|---|---|

Street Address                    City, State and ZIP Code

2005 Market Street, Floor 33, Philadelphia, PA  19103

| Name<br>UPMC, including UPMC Enterprises | No. Employees<br>500+   UPMC<br>00    UPMC Enterprises | Phone No. *(Include Area Code)*<br>412-864-4942 / 877-584-0377 |
|---|---|---|

Street Address                    City, State and ZIP Code

UPMC, US Steel Tower, 600 Grant St., Pittsburgh , PA  15219          Tel.: (412) 864-4942
Enterprises, 425 Penn Avenue, #300, Pittsburgh, PA  15206          Tel.: (877) 584-0377

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
08/08/2024          04/24/2024

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

SEE ATTACHMENT HERETO

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

06 / 03 / 2024
*Date*          *Charging Party Signature*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

Doc ID: ec227fea3018ea9d3656af7fd01cd827fc98e7f1

# Privacy Act Statement

(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses are given below.)

1.      FORM NUMBER/TITLE/DATE: EEOC Form 5, Charge of Discrimination, November 2009.

2.      AUTHORITY: 42 U.S.C. Sect. 2000e5(b), 29 U.S.C. Sec. 211.29 U.S.C. Sec. 626.

3.      PRINCIPAL PURPOSE(S): The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.

4.      ROUTINE USES: This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, conciliate and litigate charges of unlawful employment practices. Information provided on this form will be used by Commission Employees to guide the Commission's investigatory activities. This form may be disclosed to other State, Local and Federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.

5.      WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FORM NOT PROVIDING INFORMATION: Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII and the ADA must be sworn to or affirmed. Charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.

6.      [    ] Under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, this charge will be deferred to and will be processed by the State or Local agency indicated. Upon completion of the agency's processing, you will be notified as its final resolution in your case. If you wish EEOC to give Substantial Weight Review to the Agency's findings, you must send a request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's final finding as EEOC's and close your case.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a Labor organization to discriminate against a member thereof or applicant for membership, because he has opposed an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.

**ATTACHMENT TO EEOC CHARGE**

Re:    Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises

_____

1.    Charging Party Sappir ("Sappir") is a 72-year-old white male who resides at 215 Overlook Drive, McMurray, PA 15317.

2.    Respondent UPMC is a private employer located at US Steel Tower, 600 Grant Street, Pittsburgh, PA 15219, that employed 500 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

3.    Respondent UPMC Enterprises is a private employer located at 6425 Penn Avenue, Suite 200, Pittsburgh, PA 15206, that employed 200 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

4.    UPMC Enterprises holds itself out as the "innovation, commercialization, and venture capital arm of UPMC, a $26 billion health care provider."

5.    Respondent Diversified Search Group ("Diversified") is an executive recruitment search firm that holds itself out as a firm founded "with the purpose of bringing unheard voices and perspectives to the leadership table." In furtherance of this mission, Diverse states that it "continue[s] to open up opportunities in leadership for … groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors."

6.    Sappir is a seasoned Human Resources professional with extensive experience, including serving as the Chief Human Resources Officer of two publicly held companies and establishing a successful HR consulting firm. He had substantial experience in healthcare-related products and technology.

7.    In April of 2019, Sappir joined the eBenefits business of UMPC's Insurance Division as its Compliance Manager.

8.    Subsequently, Sappir's role changed to become Manager of Compliance Operations for UPMC WorkPartners.

9.    During the 2022/2023 Annual Performance Review Cycle, Sappir stated that his next career goal with UPMC was to become the HR Director for UPMC Enterprises.

10.    In July 2023, Sappir learned of a Human Resources leadership position within UPMC Enterprises.

11.    On July 10, 2023, Sappir emailed Jeanne Cunicelli, President, UPMC Enterprises and Executive President, UPMC, and Shelia Heckla ("Heckla"), Vice President, HR, Corporate

Attachment to EEOC Charge
Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises
Page: 2


Services at UPMC, to advise that he would be formally applying for the role of Sr. HR Director position with UPMC Enterprises.

12.     Heckla advised Sappir to follow up with Amanda Bothwell, Senior Director, HR, UPMC Corporate Services Division.

13.     Bothwell, in turn, advised Sappir that Diversified would be the executive search firm for the position, and that Judy Boreham ("Boreham"), a Managing Director at Diversified, would be "helping with recruitment."

14.     In reality, Boreham was assigned by UPMC Enterprises and UPMC Corporate Services to identify, evaluate, and winnow down candidates for the Sr. HR Direction position with UPMC Enterprises.

15.     After he submitted his application, Sappir and Boreham spoke for approximately an hour, and, Sappir submitted application-related materials.

16.     On or about August 8, 2023, Sappir learned that he would no longer be considered for the vacancy.  As a result, Sappir was not included among the candidates who were given the opportunity to interview with UPMC Enterprises.

17.     According to information gleaned from Diversified's website, only 22% of the individuals it placed with clients were **not** Women or People of Color.

18.     Additional information from Diversified's website appears to indicate that less than 21% of the individuals that Diversified employs are not Women or Persons of Color.

19.     UPMC Enterprises, relying upon Diversified's recommendations and guidance, eventually hired Julia M. Bennett ("Bennett"), age 49, for the Senior HR Director role.

20.     Sappir learned in December 2023 that Bennett was hired for the Senior HR Director position.

21.     A cursory examination of Bennett's education and professional experience reveals a background essentially limited to the fields of Hotel and Hospitality Management. She does not appear to hold an advanced degree.  Furthermore, there is no indication of successful relevant experiences with respect to the UPMC Enterprises' primary mission — the development of healthcare-related products and technology.

22.     By any fair reckoning, Sappir was substantially more qualified for the HR Senior Director role than Bennett was: Sappir's career in HR, with a focus on healthcare technology, spans over four decades; he is a licensed attorned; he holds an MBA (with a concentration in

Attachment to EEOC Charge
Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises
Page: 3

labor management relations); and he has taught college-level classes on HR management and business law.

23.    By denying Sappir the HR Senior Director Role and awarding it to Bennet, UPMC, UPMC Enterprises, and their agent Diversified discriminated against Sappir on the bases of his age (72) and gender (male).

Doc ID: ec227fea3018ea9d3656af7fd01cd827fc98e7f1

![Dropbox Sign logo] **Audit trail**

| | |
|---|---|
| **Title** | Sappir - EEOC Charge with Attachment (FINAL) |
| **File name** | 2024-06-03%20EEOC...20%28FINAL%29.pdf |
| **Document ID** | ec227fea3018ea9d3656af7fd01cd827fc98e7f1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT** | **06 / 03 / 2024** 20:50:07 UTC | Sent for signature to Mark Sappir (msappir@bellatlantic.net) from tschaeffer@stembercohn.com IP: 96.66.168.101

**VIEWED** | **06 / 03 / 2024** 20:50:35 UTC | Viewed by Mark Sappir (msappir@bellatlantic.net) IP: 74.111.188.171

**SIGNED** | **06 / 03 / 2024** 20:51:12 UTC | Signed by Mark Sappir (msappir@bellatlantic.net) IP: 74.111.188.171

**COMPLETED** | **06 / 03 / 2024** 20:51:12 UTC | The document has been completed.

Powered by Dropbox Sign

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:  Agency(ies) Charge No(s): |
|---|---|
| | [ ] FEPA<br>[X] EEOC 533-2024-02265 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>Mark Z. Sappir | Home Phone *(Incl. Area Code)*<br>(267) 664-3846 | Date of Birth<br>04/16/1952 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| 215 Overlook Drive, McMurray,PA  15317 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Diversified Search Group | No. Employees, Members<br>200+ | Phone No. *(Include Area Code)*<br>(215) 732-6666 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| 2005 Market Street, Floor 33, Philadelphia, PA  19103 | |

| Name<br>UPMC, including UPMC Enterprises | No. Employees<br>500+  UPMC<br>00  UPMC Enterprises | Phone No. *(Include Area Code)*<br>412-864-4942 / 877-584-0377 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| UPMC, US Steel Tower, 600 Grant St., Pittsburgh , PA  15219<br>Enterprises, 425 Penn Avenue, #300, Pittsburgh, PA  15206 | Tel.:  (412) 864-4942<br>Tel.: (877) 584-0377 |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN<br>[X] RETALIATION  [X] AGE  [ ] DISABILITY  [ ] GENETIC INFORMATION<br>[ ] OTHER *(Specify)* | Earliest           Latest<br>08/08/2024      04/24/2024<br><br>[X] CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

SEE ATTACHMENT HERETO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 06 / 03 / 2024<br><br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Doc ID: ec227fea3018ea9d3656af7fd01cd827fc98e7f1

## Privacy Act Statement

(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses are given below.)

1.      FORM NUMBER/TITLE/DATE: EEOC Form 5, Charge of Discrimination, November 2009.

2.      AUTHORITY: 42 U.S.C. Sect. 2000e5(b), 29 U.S.C. Sec. 211.29 U.S.C. Sec. 626.

3.      PRINCIPAL PURPOSE(S): The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.

4.      ROUTINE USES: This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, conciliate and litigate charges of unlawful employment practices. Information provided on this form will be used by Commission Employees to guide the Commission's investigatory activities. This form may be disclosed to other State, Local and Federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.

5.      WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FORM NOT PROVIDING INFORMATION: Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII and the ADA must be sworn to or affirmed. Charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.

6.      [    ] Under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, this charge will be deferred to and will be processed by the State or Local agency indicated. Upon completion of the agency's processing, you will be notified as its final resolution in your case. If you wish EEOC to give Substantial Weight Review to the Agency's findings, you must send a request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's final finding as EEOC's and close your case.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a Labor organization to discriminate against a member thereof or applicant for membership, because he has opposed an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.

**ATTACHMENT TO EEOC CHARGE**

Re:    Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises

_____

1.     Charging Party Sappir ("Sappir") is a 72-year-old white male who resides at 215 Overlook Drive, McMurray, PA 15317.

2.     Respondent UPMC is a private employer located at US Steel Tower, 600 Grant Street, Pittsburgh, PA 15219, that employed 500 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

3.     Respondent UPMC Enterprises is a private employer located at 6425 Penn Avenue, Suite 200, Pittsburgh, PA 15206, that employed 200 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

4.     UPMC Enterprises holds itself out as the "innovation, commercialization, and venture capital arm of UPMC, a $26 billion health care provider."

5.     Respondent Diversified Search Group ("Diversified") is an executive recruitment search firm that holds itself out as a firm founded "with the purpose of bringing unheard voices and perspectives to the leadership table." In furtherance of this mission, Diverse states that it "continue[s] to open up opportunities in leadership for … groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors."

6.     Sappir is a seasoned Human Resources professional with extensive experience, including serving as the Chief Human Resources Officer of two publicly held companies and establishing a successful HR consulting firm. He had substantial experience in healthcare-related products and technology.

7.     In April of 2019, Sappir joined the eBenefits business of UMPC's Insurance Division as its Compliance Manager.

8.     Subsequently, Sappir's role changed to become Manager of Compliance Operations for UPMC WorkPartners.

9.     During the 2022/2023 Annual Performance Review Cycle, Sappir stated that his next career goal with UPMC was to become the HR Director for UPMC Enterprises.

10.    In July 2023, Sappir learned of a Human Resources leadership position within UPMC Enterprises.

11.    On July 10, 2023, Sappir emailed Jeanne Cunicelli, President, UPMC Enterprises and Executive President, UPMC, and Shelia Heckla ("Heckla"), Vice President, HR, Corporate

Attachment to EEOC Charge
Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises
Page: 2

Services at UPMC, to advise that he would be formally applying for the role of Sr. HR Director position with UPMC Enterprises.

12.    Heckla advised Sappir to follow up with Amanda Bothwell, Senior Director, HR, UPMC Corporate Services Division.

13.    Bothwell, in turn, advised Sappir that Diversified would be the executive search firm for the position, and that Judy Boreham ("Boreham"), a Managing Director at Diversified, would be "helping with recruitment."

14.    In reality, Boreham was assigned by UPMC Enterprises and UPMC Corporate Services to identify, evaluate, and winnow down candidates for the Sr. HR Direction position with UPMC Enterprises.

15.    After he submitted his application, Sappir and Boreham spoke for approximately an hour, and, Sappir submitted application-related materials.

16.    On or about August 8, 2023, Sappir learned that he would no longer be considered for the vacancy.  As a result, Sappir was not included among the candidates who were given the opportunity to interview with UPMC Enterprises.

17.    According to information gleaned from Diversified's website, only 22% of the individuals it placed with clients were **not** Women or People of Color.

18.    Additional information from Diversified's website appears to indicate that less than 21% of the individuals that Diversified employs are not Women or Persons of Color.

19.    UPMC Enterprises, relying upon Diversified's recommendations and guidance, eventually hired Julia M. Bennett ("Bennett"), age 49, for the Senior HR Director role.

20.    Sappir learned in December 2023 that Bennett was hired for the Senior HR Director position.

21.    A cursory examination of Bennett's education and professional experience reveals a background essentially limited to the fields of Hotel and Hospitality Management. She does not appear to hold an advanced degree.  Furthermore, there is no indication of successful relevant experiences with respect to the UPMC Enterprises' primary mission — the development of healthcare-related products and technology.

22.    By any fair reckoning, Sappir was substantially more qualified for the HR Senior Director role than Bennett was: Sappir's career in HR, with a focus on healthcare technology, spans over four decades; he is a licensed attorned; he holds an MBA (with a concentration in

Attachment to EEOC Charge
Mark Z. Sappir v. Diversified Search Group and UPMC, including UPMC Enterprises
Page: 3

labor management relations); and he has taught college-level classes on HR management and business law.

23.    By denying Sappir the HR Senior Director Role and awarding it to Bennet, UPMC, UPMC Enterprises, and their agent Diversified discriminated against Sappir on the bases of his age (72) and gender (male).

Doc ID: ec227fea3018ea9d3656af7fd01cd827fc98e7f1

**Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | Sappir - EEOC Charge with Attachment (FINAL) |
| **File name** | 2024-06-03%20EEOC...20%28FINAL%29.pdf |
| **Document ID** | ec227fea3018ea9d3656af7fd01cd827fc98e7f1 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

SENT | **06 / 03 / 2024** 20:50:07 UTC | Sent for signature to Mark Sappir (msappir@bellatlantic.net) from tschaeffer@stembercohn.com IP: 96.66.168.101

VIEWED | **06 / 03 / 2024** 20:50:35 UTC | Viewed by Mark Sappir (msappir@bellatlantic.net) IP: 74.111.188.171

SIGNED | **06 / 03 / 2024** 20:51:12 UTC | Signed by Mark Sappir (msappir@bellatlantic.net) IP: 74.111.188.171

COMPLETED | **06 / 03 / 2024** 20:51:12 UTC | The document has been completed.

Powered by **Dropbox** Sign

# Exhibit B

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

Pennsylvania Human Relations Commission _____ and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>Mark Z Sappir | Home Phone *(Incl. Area Code)*<br>267-664-3846 | Date of Birth<br>04/16/1952 |
|---|---|---|
| Street Address<br>215 Overlook Dr. | City, State and ZIP Code<br>McMurray,PA  15317 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>Workpartners | No. Employees, Members<br>500+ | Phone No. *(Include Area Code)*<br>866-229-3507 |
|---|---|---|
| Street Address<br>U.S. Steel Tower, 600 Grant St.  Pittsburgh, PA  15219 | City, State and ZIP Code | |

| Name<br>UPMC | No. Employees, Members<br>500+ | Phone No. *(Include Area Code)*<br>(877) 969-2695 |
|---|---|---|
| Street Address<br>U.S. Steel Tower, 600 Grant St.  Pittsburgh, PA  15219 | City, State and ZIP Code | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest
April 24, 2024

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

SEE ATTACHMENT HERETO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 07 / 03 / 2024<br>Date              X _____ *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Doc ID: a9dc3170929397c2e9429863a6920075164473ea

 **Dropbox** Sign                                                    Audit trail

| | |
|---|---|
| Title | 2024-07-03 Charge.pdf |
| File name | 2024-07-03%20Charge.pdf |
| Document ID | a9dc3170929397c2e9429863a6920075164473ea |
| Audit trail date format | MM / DD / YYYY |
| Status | Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **07 / 03 / 2024** 19:46:46 UTC | Sent for signature to Mark Z. Sappir (msappir@bellatlantic.net) from jcohn@stembercohn.com IP: 96.66.168.101 |
| VIEWED | **07 / 03 / 2024** 20:37:21 UTC | Viewed by Mark Z. Sappir (msappir@bellatlantic.net) IP: 74.111.188.171 |
| SIGNED | **07 / 03 / 2024** 20:38:00 UTC | Signed by Mark Z. Sappir (msappir@bellatlantic.net) IP: 74.111.188.171 |
| COMPLETED | **07 / 03 / 2024** 20:38:00 UTC | The document has been completed. |

Powered by **Dropbox** Sign

**ATTACHMENT TO EEOC CHARGE**

Re:    <u>Mark Z. Sappir v. UPMC and UPMC WorkPartners</u>

---

1.    Charging Party Sappir ("Sappir") is a 72-year-old white male who resides at 215 Overlook Drive, McMurray, PA  15317.

2.    Respondent UPMC is a private employer located at US Steel Tower, 600 Grant Street, Pittsburgh, PA 15219, that employed 500 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

3.    Respondent UPMC Enterprises is a private employer located at 6425 Penn Avenue, Suite 200, Pittsburgh, PA 15206, that employed 200 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

4.    UPMC Enterprises holds itself out as the "innovation, commercialization, and venture capital arm of UPMC, a $26 billion health care provider."

5.    Sappir is a seasoned Human Resources professional with extensive experience, including serving as the Chief Human Resources Officer of two publicly held companies and establishing a successful HR consulting firm.  He has a substantial background in healthcare-related products and technology.

6.    In April of 2019, Sappir joined the eBenefits business of UMPC's Insurance Division as its Compliance Manager.

7.    Subsequently, Sappir's role changed to become Manager of Compliance Operations for UPMC WorkPartners.

8.    During the 2022/2023 Annual Performance Review Cycle, Sappir stated that his next career goal with UPMC was to become the HR Director for UPMC Enterprises.

9.    In July 2023, Sappir learned of a Human Resources leadership position within UPMC Enterprises.

10.    On July 10, 2023, Sappir emailed Jeanne Cunicelli, President, UPMC Enterprises and Executive President, UPMC, and Shelia Heckla ("Heckla"), Vice President, HR, Corporate Services at UPMC, to advise that he would be formally applying for the role of Sr. HR Director position with UPMC Enterprises.

11.    Heckla instructed Sappir to follow up with Amanda Bothwell, Senior Director, HR, UPMC Corporate Services Division.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and  UPMC WorkPartners
Page: 2

12.    On July 11, 2023, Bothwell, in turn, advised Sappir that Diversified would be the executive search firm for the position, and that Judy Boreham ("Boreham"), a Managing Director at Diversified, would be "helping with recruitment."

13.    In reality, Boreham was assigned by UPMC Enterprises and UPMC Corporate Services to identify, evaluate, and winnow down candidates for the Sr. HR Direction position with UPMC Enterprises.

14.    After he submitted his application, On July 17, 2023, Sappir and Boreham spoke for approximately an hour (Via an On-line Zoom Meeting), and, Sappir submitted application-related materials.

15.    On or about August 8, 2023, Sappir learned that he would no longer be considered for the vacancy.  As a result, Sappir was not included among the candidates who were given the opportunity to interview with the hiring decision makers of UPMC Enterprises or members of UPMC's Human Resources Department involved with the ultimate hiring decision.

16.    According to information gleaned from Diversified's website, only 22% of the individuals it placed with clients were **not** Women or People of Color.

17.    Additional information from Diversified's website appears to indicate that less than 21% of the individuals that Diversified employs in leadership and professional roles are not Women or Persons of Color.

18.    UPMC Enterprises, (subsequent to receiving Diversified's recommendations and guidance, eventually hired Julia M. Bennett ("Bennett"), age 49.), for the Senior HR Director role.

19.    Sappir learned in or about December 2023 that Bennett was hired for the Senior HR Director position.

20.    A cursory examination of Bennett's education and professional experience reveals a background essentially limited to the fields of Hotel and Hospitality Management. She does not appear to hold an advanced degree.  Furthermore, there is no indication of successful relevant experiences with respect to the UPMC Enterprises' primary mission — the development of healthcare-related products and technology.

21.    By any fair reckoning, Sappir was substantially more qualified for the HR Senior Director role than Bennett was: Sappir's career in HR, with a focus on healthcare technology, spans over four decades; he is a licensed attorney; he holds an MBA (with a concentration in labor management relations); and he has taught college-level classes on

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 3

HR management and business law. In addition, the levels of Ms. Bennett's relevant professional background and educational preparation were far below the levels possessed by Ms. Amy Cook, the position's prior incumbent both qualitatively and qualitatively.

22.    In accordance with UPMC's standard guidance provided to employees regarding potential deviations for UPMC's Policies, in December 2023, Sappir raised concerns with Andrew Yohe, his immediate supervisor regarding how the treatment of his candidacy for UPMC Enterprises' Sr. Director position seemed to violate antidiscrimination laws and UPMC policies. Both orally and in written form included in the annual Self-Assessment form, Sappir conveyed the following information and request to Mr. Yohe:

**In the next 1-2 years, where would you like to be in your career at UPMC?**
During last year's Performance Appraisal Cycle I indicated that my Career Goal was to become the Human Resources Director for the UPMC Enterprise's business unit. In July 2023 I immediately responded when the vacancy for that position was posted. Notwithstanding the fact that I met and exceeded all the stated required qualifications, this was the second time during my employment by UPMC when I applied for an HR position, but not included among those on the candidate slate who were deemed worthy to be the granted the opportunity to be interviewed by members of the hiring business unit. Based on the totality of circumstance relating to the process,

I cannot help but to have serious concerns that my most recent experience may be indicative of actions that were not in conformance with UPMC's Code of Ethics and/or Human Resources Policies & Procedures with respect to Equal Employment Opportunity and Non-Discrimination.

**How are you developing the knowledge and skills to achieve your career goals?**
It is important to note that in the most recent situation cited, not only was not given an opportunity to meet with the hiring manager and members of the business unit, my request for feedback was ignored. As such, I have no way of knowing what if any aspects of my professional background and/or capabilities need to be improved upon in order for my candidacy for comparable positions (Director Level) to receive more than cursory consideration in the future.

**What resources, tools, or information will you need to support your career goals?**
Expanding on my comments in the previous section, if there are specific aspects of my professional background, capabilities and/or personal qualities that are impediments to career advancement opportunities within

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 4

UPMC, I need to know what they are so as to enable me to effectively address them.

Furthermore, I need to be assured and feel confident that any actions and or decisions made related to my potential career advancement opportunities (both retrospectively and prospectively) have been and will continue to be in full compliance with those portions of UPMC's Code of Ethics and Policy & Procedures relating to Equal Employment Opportunity.

**How can your manager help you with your career goals?**
I would be appreciative if Andy would convey the concerns cited herein to those individuals/organizational entities within UPMC who would be best positioned to impartially review and evaluate the facts and circumstances that form the basis of my concerns; and if warranted initiate appropriate remedial actions.
**UPMC provides many diverse career opportunities to employees. As you consider the next steps in your career at UPMC, what are your preferences related to work location and mobility: (select all that apply)**
I am willing and able to travel across one or more states (nationally), which may require frequent and more extensive time away from home. (Nationally Mobile) I prefer to work in a hybrid environment, which blends both virtual work with in person work at a UPMC facility. (Hybrid Work)

23.    Sappir intended to raise these same concerns to UMPC's Chief Compliance Officer in January 2024. However, due to a serious medical condition, Sappir was on FMLA leave until early April 2024.

24.    On April 5, 2024, UPMC's Excellence in Action ("EIA") committee sent Sappir an email congratulating him on his five years of service. In that email, EIA and "senior leadership team of UPMC Insurance Services" noted Sappir's "continued successes, growth, and hard work."

25.    On April 9, 2024, Sappir submitted two copies of binders of detailed information and analyses to Georgia Foley ("Foley"), SVP and Chief Compliance and Ethics Officer, concerning (a) gender bias in the hiring of Bennett , and (b) gender discrimination resulting in Sappir's elimination from the applicant pool and non-selection for the HR Senior VP role.

26.    In his submission to Foley, Sapir stated that the recruitment and hiring of Bennett was (a) discriminatory on the basis of gender, and (b) inconsistent with UPMC's stated hiring policies.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and  UPMC WorkPartners
Page: 5

27.    Sapir also noted that the vast majority of leadership roles within UPMC were held by women.

28.    On April 10, 2024, Foley emailed Sappir to acknowledge receipt of his submission.  Foley stated that she referred the matter to the corporate UPMC Office of Ethics, Compliance, and Audit Services ("Compliance Office").

29.    On April 24, 2024, UPMC informed Sappir that he would be terminated as part of a company-wide reduction in force.

30.    The next day, in conformance with guidance contained in the "Notice of Termination Letter dated April 24, 2024" he received, Sappir emailed Foley to request the Compliance Office complete its investigation into the issues that Sapir raised:

Dear Georgia:

By now I assume you have been made aware of the fact I have been included in the group of UPMC employees who were chosen to be separated from the organization.

As such, I would appreciate it if you would convey the following information to UPMC's Office of Ethics, Compliance, and Audit Services on my behalf:

1.  Notwithstanding the fact that my employment status has changed, it is my expectation that the investigation will nonetheless continue until it has been fully completed.

2.  It is also my expectation that all of the unabridged findings of the investigation, as well as any information regarding any subsequent actions taken stemming from the findings will be shared with me at the conclusion of the investigation.

3.  Toward that end I am fully prepared to provide any additional information relating to the matters under investigation and/or make myself available to meet in person directly with the investigators.

4.  The following is additional information regarding the matters under review that should be added to the scope of the investigator's focus:

    a.  Recently I took the opportunity to access the web sites for all UPMC Enterprises' portfolio companies, most of which (but not all) displayed information about their respective

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and  UPMC WorkPartners
Page: 6

leadership teams. The following information was gleaned from this undertaking:

i. With only one exception, the HR Leadership positions of all the companies (that posted the information) were held by women.

ii. In addition, without exception the Operations Leadership positions of all the companies (that posted the information) were also held by women.

These facts seem to support the possibility that UPMC Enterprises prefers to have support positions filled by women, to the detriment of qualified men.

b. Although while I don't have direct specific information that I can cite, I have come to believe that approximately 75% of the positions in UPMC's Human Resources Departments are held by women. With respect to the remaining 25%, I do not know how many are not deemed to be Persons of Color.

31. On April 25, 2024 Sappir received the following email reply from Foley:

Good morning, Mark –

These are challenging times, fraught with hard decisions that must be made to meet UPMC's business needs. That said, I am sorry that you have been one of those employees who have been impacted.

I will certainly pass along what you have shared below to the corporate Office of Ethics, Compliance and Audit Services. I have no doubt that their well-established and effective investigative process will (continue) to be followed in this matter.

Good luck to you, Georgia

32. The Compliance Office never contacted Sappir after April 10, 2024.

33. UPMC never informed Sappir as to the results (if any) of its investigation.

34. Prior to separation on April 24, 2024, Sappir was a valued and well-respected employee.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 7

35.    The timing of his separation is highly suggestive of retaliation for his complaints of gender discrimination.

36.    Based on the foregoing, Sappir was unlawfully separated from UPMC (a) in retaliation for his complaints of gender discrimination, and (b) due to his age and/or gender.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s): |
|---|---|---|

Pennsylvania Human Relations Commission — and EEOC
_State or local Agency, if any_

| Name _(indicate Mr., Ms., Mrs.)_<br>Mark Z Sappir | Home Phone _(Incl. Area Code)_<br>267-664-3846 | Date of Birth<br>04/16/1952 |
|---|---|---|

| Street Address<br>215 Overlook Dr. | City, State and ZIP Code<br>McMurray,PA  15317 | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. _(If more than two, list under PARTICULARS below.)_

| Name<br>Workpartners | No. Employees, Members<br>500+ | Phone No. _(Include Area Code)_<br>866-229-3507 |
|---|---|---|

| Street Address<br>U.S. Steel Tower, 600 Grant St.  Pittsburgh, PA  15219 | | |
|---|---|---|

| Name<br>UPMC | No. Employees, Members<br>500+ | Phone No. _(Include Area Code)_<br>(877) 969-2695 |
|---|---|---|

| Street Address<br>U.S. Steel Tower, 600 Grant St.  Pittsburgh, PA  15219 | | |
|---|---|---|

DISCRIMINATION BASED ON _(Check appropriate box(es).)_

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER _(Specify)_

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
April 24, 2024

☐ CONTINUING ACTION

THE PARTICULARS ARE _(If additional paper is needed, attach extra sheet(s))_:

SEE ATTACHMENT HERETO

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

07 / 03 / 2024
_Date_        X _Charging Party Signature_

NOTARY – _When necessary for State and Local Agency Requirements_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
_(month, day, year)_

Doc ID: a9dc3170929397c2e9429863a6920075164473ea

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | 2024-07-03 Charge.pdf |
| File name | 2024-07-03%20Charge.pdf |
| Document ID | a9dc3170929397c2e9429863a6920075164473ea |
| Audit trail date format | MM / DD / YYYY |
| Status | Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| ⟳ SENT | 07 / 03 / 2024 19:46:46 UTC | Sent for signature to Mark Z. Sappir (msappir@bellatlantic.net) from jcohn@stembercohn.com IP: 96.66.168.101 |
| ◉ VIEWED | 07 / 03 / 2024 20:37:21 UTC | Viewed by Mark Z. Sappir (msappir@bellatlantic.net) IP: 74.111.188.171 |
| ⟋ SIGNED | 07 / 03 / 2024 20:38:00 UTC | Signed by Mark Z. Sappir (msappir@bellatlantic.net) IP: 74.111.188.171 |
| ⟳ COMPLETED | 07 / 03 / 2024 20:38:00 UTC | The document has been completed. |

Powered by **Dropbox** Sign

**ATTACHMENT TO EEOC CHARGE**

Re:    <u>Mark Z. Sappir v. UPMC and UPMC WorkPartners</u>

---

1.    Charging Party Sappir ("Sappir") is a 72-year-old white male who resides at 215 Overlook Drive, McMurray, PA  15317.

2.    Respondent UPMC is a private employer located at US Steel Tower, 600 Grant Street, Pittsburgh, PA 15219, that employed 500 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

3.    Respondent UPMC Enterprises is a private employer located at 6425 Penn Avenue, Suite 200, Pittsburgh, PA 15206, that employed 200 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

4.    UPMC Enterprises holds itself out as the "innovation, commercialization, and venture capital arm of UPMC, a $26 billion health care provider."

5.    Sappir is a seasoned Human Resources professional with extensive experience, including serving as the Chief Human Resources Officer of two publicly held companies and establishing a successful HR consulting firm.  He has a substantial background in healthcare-related products and technology.

6.    In April of 2019, Sappir joined the eBenefits business of UMPC's Insurance Division as its Compliance Manager.

7.    Subsequently, Sappir's role changed to become Manager of Compliance Operations for UPMC WorkPartners.

8.    During the 2022/2023 Annual Performance Review Cycle, Sappir stated that his next career goal with UPMC was to become the HR Director for UPMC Enterprises.

9.    In July 2023, Sappir learned of a Human Resources leadership position within UPMC Enterprises.

10.    On July 10, 2023, Sappir emailed Jeanne Cunicelli, President, UPMC Enterprises and Executive President, UPMC, and Shelia Heckla ("Heckla"), Vice President, HR, Corporate Services at UPMC, to advise that he would be formally applying for the role of Sr. HR Director position with UPMC Enterprises.

11.    Heckla instructed Sappir to follow up with Amanda Bothwell, Senior Director, HR, UPMC Corporate Services Division.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 2

12.    On July 11, 2023, Bothwell, in turn, advised Sappir that Diversified would be the executive search firm for the position, and that Judy Boreham ("Boreham"), a Managing Director at Diversified, would be "helping with recruitment."

13.    In reality, Boreham was assigned by UPMC Enterprises and UPMC Corporate Services to identify, evaluate, and winnow down candidates for the Sr. HR Direction position with UPMC Enterprises.

14.    After he submitted his application, On July 17, 2023, Sappir and Boreham spoke for approximately an hour (Via an On-line Zoom Meeting), and, Sappir submitted application-related materials.

15.    On or about August 8, 2023, Sappir learned that he would no longer be considered for the vacancy. As a result, Sappir was not included among the candidates who were given the opportunity to interview with the hiring decision makers of UPMC Enterprises or members of UPMC's Human Resources Department involved with the ultimate hiring decision.

16.    According to information gleaned from Diversified's website, only 22% of the individuals it placed with clients were **not** Women or People of Color.

17.    Additional information from Diversified's website appears to indicate that less than 21% of the individuals that Diversified employs in leadership and professional roles are not Women or Persons of Color.

18.    UPMC Enterprises, (subsequent to receiving Diversified's recommendations and guidance, eventually hired Julia M. Bennett ("Bennett"), age 49.), for the Senior HR Director role.

19.    Sappir learned in or about December 2023 that Bennett was hired for the Senior HR Director position.

20.    A cursory examination of Bennett's education and professional experience reveals a background essentially limited to the fields of Hotel and Hospitality Management. She does not appear to hold an advanced degree. Furthermore, there is no indication of successful relevant experiences with respect to the UPMC Enterprises' primary mission — the development of healthcare-related products and technology.

21.    By any fair reckoning, Sappir was substantially more qualified for the HR Senior Director role than Bennett was: Sappir's career in HR, with a focus on healthcare technology, spans over four decades; he is a licensed attorney; he holds an MBA (with a concentration in labor management relations); and he has taught college-level classes on

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 3

HR management and business law. In addition, the levels of Ms. Bennett's relevant professional background and educational preparation were far below the levels possessed by Ms. Amy Cook, the position's prior incumbent both qualitatively and qualitatively.

22.     In accordance with UPMC's standard guidance provided to employees regarding potential deviations for UPMC's Policies, in December 2023, Sappir raised concerns with Andrew Yohe, his immediate supervisor regarding how the treatment of his candidacy for UPMC Enterprises' Sr. Director position seemed to violate antidiscrimination laws and UPMC policies. Both orally and in written form included in the annual Self-Assessment form, Sappir conveyed the following information and request to Mr. Yohe:

**In the next 1-2 years, where would you like to be in your career at UPMC?**
During last year's Performance Appraisal Cycle I indicated that my Career Goal was to become the Human Resources Director for the UPMC Enterprise's business unit. In July 2023 I immediately responded when the vacancy for that position was posted. Notwithstanding the fact that I met and exceeded all the stated required qualifications, this was the second time during my employment by UPMC when I applied for an HR position, but not included among those on the candidate slate who were deemed worthy to be the granted the opportunity to be interviewed by members of the hiring business unit. Based on the totality of circumstance relating to the process,

I cannot help but to have serious concerns that my most recent experience may be indicative of actions that were not in conformance with UPMC's Code of Ethics and/or Human Resources Policies & Procedures with respect to Equal Employment Opportunity and Non-Discrimination.

**How are you developing the knowledge and skills to achieve your career goals?**
It is important to note that in the most recent situation cited, not only was not given an opportunity to meet with the hiring manager and members of the business unit, my request for feedback was ignored. As such, I have no way of knowing what if any aspects of my professional background and/or capabilities need to be improved upon in order for my candidacy for comparable positions (Director Level) to receive more than cursory consideration in the future.

**What resources, tools, or information will you need to support your career goals?**
Expanding on my comments in the previous section, if there are specific aspects of my professional background, capabilities and/or personal qualities that are impediments to career advancement opportunities within

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 4

UPMC, I need to know what they are so as to enable me to effectively address them.

Furthermore, I need to be assured and feel confident that any actions and or decisions made related to my potential career advancement opportunities (both retrospectively and prospectively) have been and will continue to be in full compliance with those portions of UPMC's Code of Ethics and Policy & Procedures relating to Equal Employment Opportunity.

**How can your manager help you with your career goals?**
I would be appreciative if Andy would convey the concerns cited herein to those individuals/organizational entities within UPMC who would be best positioned to impartially review and evaluate the facts and circumstances that form the basis of my concerns; and if warranted initiate appropriate remedial actions.
**UPMC provides many diverse career opportunities to employees. As you consider the next steps in your career at UPMC, what are your preferences related to work location and mobility: (select all that apply)**
I am willing and able to travel across one or more states (nationally), which may require frequent and more extensive time away from home. (Nationally Mobile) I prefer to work in a hybrid environment, which blends both virtual work with in person work at a UPMC facility. (Hybrid Work)

23.    Sappir intended to raise these same concerns to UMPC's Chief Compliance Officer in January 2024. However, due to a serious medical condition, Sappir was on FMLA leave until early April 2024.

24.    On April 5, 2024, UPMC's Excellence in Action ("EIA") committee sent Sappir an email congratulating him on his five years of service. In that email, EIA and "senior leadership team of UPMC Insurance Services" noted Sappir's "continued successes, growth, and hard work."

25.    On April 9, 2024, Sappir submitted two copies of binders of detailed information and analyses to Georgia Foley ("Foley"), SVP and Chief Compliance and Ethics Officer, concerning (a) gender bias in the hiring of Bennett , and (b) gender discrimination resulting in Sappir's elimination from the applicant pool and non-selection for the HR Senior VP role.

26.    In his submission to Foley, Sapir stated that the recruitment and hiring of Bennett was (a) discriminatory on the basis of gender, and (b) inconsistent with UPMC's stated hiring policies.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and  UPMC WorkPartners
Page: 5

27.     Sapir also noted that the vast majority of leadership roles within UPMC were held by women.

28.     On April 10, 2024, Foley emailed Sappir to acknowledge receipt of his submission.  Foley stated that she referred the matter to the corporate UPMC Office of Ethics, Compliance, and Audit Services ("Compliance Office").

29.     On April 24, 2024, UPMC informed Sappir that he would be terminated as part of a company-wide reduction in force.

30.     The next day, in conformance with guidance contained in the "Notice of Termination Letter dated April 24, 2024" he received, Sappir emailed Foley to request the Compliance Office complete its investigation into the issues that Sapir raised:

Dear Georgia:

By now I assume you have been made aware of the fact I have been included in the group of UPMC employees who were chosen to be separated from the organization.

As such, I would appreciate it if you would convey the following information to UPMC's Office of Ethics, Compliance, and Audit Services on my behalf:

1.  Notwithstanding the fact that my employment status has changed, it is my expectation that the investigation will nonetheless continue until it has been fully completed.

2.  It is also my expectation that all of the unabridged findings of the investigation, as well as any information regarding any subsequent actions taken stemming from the findings will be shared with me at the conclusion of the investigation.

3.  Toward that end I am fully prepared to provide any additional information relating to the matters under investigation and/or make myself available to meet in person directly with the investigators.

4.  The following is additional information regarding the matters under review that should be added to the scope of the investigator's focus:

   a.  Recently I took the opportunity to access the web sites for all UPMC Enterprises' portfolio companies, most of which (but not all) displayed information about their respective

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and UPMC WorkPartners
Page: 6

leadership teams. The following information was gleaned from this undertaking:

i.   With only one exception, the HR Leadership positions of all the companies (that posted the information) were held by women.

ii.   In addition, without exception the Operations Leadership positions of all the companies (that posted the information) were also held by women.

These facts seem to support the possibility that UPMC Enterprises prefers to have support positions filled by women, to the detriment of qualified men.

b.   Although while I don't have direct specific information that I can cite, I have come to believe that approximately 75% of the positions in UPMC's Human Resources Departments are held by women. With respect to the remaining 25%, I do not know how many are not deemed to be Persons of Color.

31.   On April 25, 2024 Sappir received the following email reply from Foley:

Good morning, Mark –

These are challenging times, fraught with hard decisions that must be made to meet UPMC's business needs. That said, I am sorry that you have been one of those employees who have been impacted.

I will certainly pass along what you have shared below to the corporate Office of Ethics, Compliance and Audit Services. I have no doubt that their well-established and effective investigative process will (continue) to be followed in this matter.

Good luck to you, Georgia

32.   The Compliance Office never contacted Sappir after April 10, 2024.

33.   UPMC never informed Sappir as to the results (if any) of its investigation.

34.   Prior to separation on April 24, 2024, Sappir was a valued and well-respected employee.

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC and  UPMC WorkPartners
Page: 7


35.     The timing of his separation is highly suggestive of retaliation for his complaints of gender discrimination.

36.     Based on the foregoing, Sappir was unlawfully separated from UPMC (a) in retaliation for his complaints of gender discrimination, and (b) due to his age and/or gender.

# Exhibit C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | | ☐ FEPA ☒ EEOC | 533-2025-02182 |
| Pennsylvania Human Relations Commission | | | and EEOC |
| State or local Agency, if any | | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mark Z. Sappir | (267) 664-3846 | 04/16/1952 |

| Street Address | City, State and ZIP Code |
|---|---|
| 215 Overlook Drive, McMurray, PA 15317 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UPMC | 500+ | (412) 864-4942 |

| Street Address | City, State and ZIP Code |
|---|---|
| U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest — August 15, 2024 — Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHMENT HERETO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5/11/2022 _____ Date    x *Mark Sappir* Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

## Privacy Act Statement

(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses are given below.)

1.    FORM NUMBER/TITLE/DATE: EEOC Form 5, Charge of Discrimination, November 2009.

2.    AUTHORITY: 42 U.S.C. Sect. 2000e5(b), 29 U.S.C. Sec. 211.29 U.S.C. Sec. 626.

3.    PRINCIPAL PURPOSE(S): The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.

4.    ROUTINE USES: This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, conciliate and litigate charges of unlawful employment practices. Information provided on this form will be used by Commission Employees to guide the Commission's investigatory activities. This form may be disclosed to other State, Local and Federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.

5.    WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FORM NOT PROVIDING INFORMATION: Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII and the ADA must be sworn to or affirmed. Charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.

6.    [    ] Under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, this charge will be deferred to and will be processed by the State or Local agency indicated. Upon completion of the agency's processing, you will be notified as its final resolution in your case. If you wish EEOC to give Substantial Weight Review to the Agency's findings, you must send a request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's final finding as EEOC's and close your case.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a Labor organization to discriminate against a member thereof or applicant for membership, because he has opposed an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

## ATTACHMENT TO EEOC CHARGE

Re:    Mark Z. Sappir v. UPMC

_____

1.    Charging Party Sappir ("Sappir") is a 73-year-old white male who resides at 215 Overlook Drive, McMurray, PA 15317.

2.    Respondent UPMC is a private employer located at US Steel Tower, 600 Grant Street, Pittsburgh, PA 15219, which employed 500 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

3.    Respondent UPMC Enterprises is a private employer located at 6425 Penn Avenue, Suite 200, Pittsburgh, PA 15206, that employed 200 or more persons in Pennsylvania during the period when the unlawful conduct detailed herein occurred.

4.    Sappir is a seasoned Human Resources professional with extensive experience, including serving as the Chief Human Resources Officer of two publicly held companies and establishing a successful HR consulting firm.  He has a substantial background in healthcare-related products and technology.

5.    In April 2019, Sappir joined the eBenefits business of UMPC's Insurance Division as its Compliance Manager.

6.    Subsequently, Sappir's role changed to become Manager of Compliance Operations for UPMC WorkPartners.

7.    In July 2023, Sappir applied for a position as Sr. HR Director of UPMC Enterprises.

8.    At the time, on its careers website (careers.upmc.com), a site that includes employment listings for various UPMC subsidiary companies and affiliates, UPMC noted that it was "committed to diversity, equity, and inclusion," and boasted that it received the Catalyst Award, "the premier gender equity award for advocates of diversity, equity, and inclusion which recognizes organizations whose influential and pioneering initiatives accelerate and advance women and people of color into leadership roles."[1]

9.    To conduct a search for the Sr. HR Director position, UPMC retained Diversified Search Group ("Diversified"), a recruiting agency which specializes in recruiting and placing candidates in furtherance of DEI objectives.

_____

[1] https://web.archive.org/web/20230723172457/https://careers.upmc.com/. **(Exhibit A)**. UPMC has since deleted this language from careers.upmc.com.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC
Page: 2

10.     At the time, Diversified held itself out as a firm founded "with the purposes of bringing unheard voices and perspectives to the leadership table." In furtherance of this mission, Diversified stated on its website that it "continue[s] to open up opportunities in leadership for… groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors" — i.e., not white males like Sappir.[2]

11.     DSG stated unequivocally on its website, "**DEI is our mission, mandate, and methodology – year after year, the impact is clear**," and boasted that "**76% of our 2021 and 2022 placements are women and/or people of color.**"[3]

12.     Elsewhere on its website, Diversified touted statistics showing that only 22% of its search assignments were filled by men who were not People of Color.[4] In addition, as of December 2023, only 20.9% of the ranks of Diversified's Leadership and professional employees were men who were not People of Color.

13.     Judy Boreham, a Managing Director at Diversified, had primary responsibility for conducting the search.

14.     On July 17, 2023, Boreham interviewed Sappir for the Sr. HR Director position.

15.     On or about August 8, 2023, Diversified notified Sappir that he would no longer be considered for the vacancy. Accordingly, Sappir was not included among the three (all female) candidates who were given the opportunity to interview with the hiring decisionmakers of UPMC Enterprises.

16.     Notably, in her notes about candidates, Boreham stated that Eliza Swann, Sr. Vice President and Chief Operating Officer for UPMC Enterprise, "**liked DEI**" aspect of one of the candidates she favored. **(Exhibit E)**

---

[2] https://web.archive.org/web/20230811182934/https://diversifiedsearchgroup.com/about-us/diversity-equity-and-inclusion. **(Exhibit B)**. Diversified has since deleted this page from its website.

[3] https://web.archive.org/web/20230811182934/https://diversifiedsearchgroup.com/about-us/diversity-equity-and-inclusion/ **(Exhibit C)**. Diversified has since deleted this page from its website.

[4] https://web.archive.org/web/20230927185711/https://diversifiedsearchgroup.com/our-brands/grant-cooper/#impact. **(Exhibit D)**. Diversified has since deleted this page from its website.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC
Page: 3

17.     Sappir learned in or about December 2023, that Julia Bennett, a woman then-age 49, was hired for the Senior HR Director position.

18.     A cursory examination of Bennett's education and professional experience reveals a background essentially limited to the fields of Hotel and Hospitality Management. She does not appear to hold an advanced degree. Furthermore, there is no indication of successful relevant experiences with respect to the UPMC Enterprises' primary mission — the development of healthcare-related products and technology.

19.     By any fair reckoning, Sappir was substantially more qualified for the HR Senior Director role than Bennett was: Sappir's career HR, with a focus on healthcare technology, spans over four decades; he is a licensed attorney; he holds an MBA (with a concentration in labor management relations); and he has taught college-level classes on HR management and business law. In addition, the levels of Bennett's relevant professional background and educational preparation were — both qualitatively and qualitatively — far below the levels possessed by Amy Cook, the position's prior incumbent.

20.     After learning of Bennett's selection, and in accordance with UPMC's standard guidance provided to employees regarding potential deviations for UPMC's Policies, in December 2023, Sappir raised concerns with Andrew Yohe, his immediate supervisor, regarding how the treatment of his candidacy for the Sr. HR Director position appeared to violate antidiscrimination laws and UPMC policies.

21.     Sappir intended to raise these same concerns to UMPC's Chief Compliance Officer in January 2024. However, due to a serious medical condition, Sappir was on FMLA leave until early April 2024.

22.     On April 5, 2024, UPMC's Excellence in Action ("EIA") committee sent Sappir an email congratulating him on his five years of service. In that email, EIA and "senior leadership team of UPMC Insurance Services" noted Sappir's "continued successes, growth, and hard work."

23.     On April 9, 2024, Sappir submitted two copies of binders of detailed information and analyses to Georgia Foley ("Foley"), SVP and Chief Compliance and Ethics Officer, concerning (a) gender bias in the hiring process for the Sr. HR Director position, and (b) gender discrimination resulting in Sappir's elimination from the applicant pool and non-selection for the job.

24.     Sappir also provided thorough documentation of Diversified's DEI focus, and he noted that women and Persons of Color held the vast majority of Senior Leadership, Director Level, an Associate Level roles within Diversified

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC
Page: 4

25.      On April 10, 2024, Foley emailed Sappir to acknowledge receipt of his submission. Foley stated that she had referred the matter to the corporate UPMC Office of Ethics, Compliance, and Audit Services.

26.      On April 24, 2024, UPMC informed Sappir that he would be terminated, purportedly as part of a UPMC-wide reduction in force.

27.      On June 3, 2024, Sappir filed EEOC Charge No. 533-2024-02260, against Diversified, alleging that Diversified, acting as an agent of UPMC and UMPC Enterprises, discriminated against him on the basis of age and sex by denying his application for the Senior HR Director Application.

28.      The same day, Sappir filed EEOC Charge Nos. 533-2024-02262 and 533-2024-02265 against UPMC and UPMC Enterprises, alleging that they discriminated against him on the basis of age and sex by denying his application.

29.      On July 3, 2024, Sappir filed EEOC Charge Nos. 533-2024-02451 and 533-2024-02452, against WorkPartners and UPMC, for terminating his employment in retaliation for his internal complaints concerning discrimination in the hiring and recruitment process for the Senior HR Director Position.[5]

*[intentionally left blnak]*

---

[5] The Pittsburgh Office of the EEOC transferred all Sappir's Charges against UPMC, WorkPartners, and UPMC Enterprises (collectively, the "UPMC Charges") to the Pittsburgh Commission on Human Relations (the "Pittsburgh Commission"), which subsequently issued determinations of untimeliness or lack of probable cause on all the UPMC Charges. In requests for substantial weight review by the EEOC, Sappir challenged the Pittsburgh Commission's decisions. The EEOC's Philadelphia Office, per Jane Duncan, granted those requests and reversed the Pittsburgh Commission's determinations, and directed the Pittsburgh Commission to continue investigating the UPMC Charges.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

Attachment to EEOC Charge
Mark Z. Sappir v. UPMC
Page: 5

30.    Since his complaints about discrimination and subsequent termination, Sappir has applied for eight positions with UPMC. He filed his first application in mid-August 2024.  He received seven rejections without an interview, and he was granted a single, one-way AI-assisted video interview for a position that he was later denied:

| Position | Job ID No. | Interview (Y or N) | Application Outcome |
|---|---|---|---|
| Manager, Employee Benefits | 6265077287 | N | REJECTED |
| Senior Compensation Analyst | 6362954824 | N | REJECTED |
| Manager, Human Resources | 6481869634 | N | REJECTED |
| Consultant, Human Resources | 6647753244 | Y VIA AI, one-way video interview) | REJECTED |
| Senior Retirement Benefits Specialist | 6679091621 | N | REJECTED |
| Consultant, Human Resources | 667553295 | N | REJECTED |
| Benefits Specialist | 6694940596 | N | REJECTED |
| Senior HR Consultant | 6792945712 | N | REJECTED |

31.    Sappir was qualified for all of the foregoing positions.

32.    UPMC denied all of his applications in retaliation for: (a) his protected activity prior to his termination, and (b) his subsequent filing of multiple EEOC charges related to the unlawful denial of his application for the HR Director role and his termination

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

# EXHIBIT A

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

https://careers.upmc.com/

499 captures



10 UPMC hospitals have achieved ANCC Magnet® Recognition for Nursing Excellence, and U.S. News consistently ranks UPMC Presbyterian Shadyside among the nation's best hospitals and UPMC Children's Hospital of Pittsburgh on its Honor Roll of Best Children's Hospitals.



LEARN MORE

OUR VALUES

## Committed to Diversity, Equity, and Inclusion

By fostering an environment where every member of our team is valued and has a voice, we aim to emphasize a simple point: who you are is important, and you have a place at UPMC.

In 2023, UPMC was recognized with a Catalyst Award, the premier gender equity award for advocates of diversity, equity, and inclusion which recognizes organizations whose influential and pioneering initiatives accelerate and advance women and people of color into leadership roles.



LEARN MORE



Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

# EXHIBIT B

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

https://diversifiedsearchgroup.com/about-us-diversity-equity-and-inclusion/

37 captures



# Diversity, Equity, and Inclusion Executive Roles

We believe in the power of people and their unique perspectives.

— DEI IS OUR MISSION. IT'S IN OUR DNA AND OUR NAME.

**PARTNER WITH US**

Home » About Us » Diversity Equity and Inclusion

## Our Commitment

Diversified Search Group was founded in 1974 with the purpose of bringing unheard voices and perspectives to the leadership table. Today, we continue to open up opportunities in leadership for women, people of color, members of the LGBTQ+ community, immigrants, veterans, people with disabilities, and others from groups that have been previously underrepresented in the corporate, nonprofit, healthcare, and academic sectors.

**Our commitment is stronger than ever**

At Diversified Search Group, we work at every turn to build partnerships with our clients and candidates that reflect values of diversity, equity, and inclusion (DEI) as well as foster environments of belonging and accountability. Just as the public conversation about DEI continues to evolve, so does our expertise, under the leadership of one of the most diverse executive teams in the search industry.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

# EXHIBIT C

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

https://careers.upmc.com/
499 captures



10 UPMC hospitals have achieved ANCC Magnet® Recognition for Nursing Excellence, and U.S. News consistently ranks UPMC Presbyterian Shadyside among the nation's best hospitals and UPMC Children's Hospital of Pittsburgh on its Honor Roll of Best Children's Hospitals.

LEARN MORE

OUR VALUES

## Committed to Diversity, Equity, and Inclusion

By fostering an environment where every member of our team is valued and has a voice, we aim to emphasize a simple point: who you are is important, and you have a place at UPMC.

In 2023, UPMC was recognized with a Catalyst Award, the premier gender equity award for advocates of diversity, equity, and inclusion which recognizes organizations whose influential and pioneering initiatives accelerate and advance women and people of color into leadership roles.

LEARN MORE



Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

# EXHIBIT D

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

https://...
SEARCHGROUP

Together, we are not simply a healthcare executive search firm – we are a trusted partner with a track record of success.

## Who We Work With



UT Health San Antonio    UPMC LIFE CHANGING MEDICINE    Piedmont    CENTENE Corporation    Yale NewHaven Health

## Our Impact

—

Diversified Search Group takes a pioneering approach to identifying candidates who will lead your healthcare organization to outperform its peers.

**84%**
of our leaders have stayed in their roles for two years and/or have ascended to new roles

**78%**
of our 2021 placements are women and/or people of color

**70%**
of our searches are for returning clients

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

# EXHIBIT E

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

UPMC Enterprises.

Amanda
Shelieh.
Eliza

7/20/23

Julia Bennett —

* Eliza — liked her "terrific" good personality
would like to help nudge her back.
more forward

[redacted]

Amanda — exp. on point but UPMC larger, strong
sense of governance. Is she adaptable.
* Eliza — liked her. UPMC v. different so hard to find exact
liked DEI. Handled i/v well.                    match.

[redacted]

no one's met = meeting Shelagh 8/2

[redacted]  — internal   ( returned call 7/24
                          (i/v 7/27) 9.30am
                          to 10.30am

[redacted]

— afraid of   Mark Sappir —
Eliza &                                 perceived lack of pizaz—
might not   I said not personality fit & potential. Said methodical.
be right     "hold for now" — Shelagh.
(she's na)
[redacted]

Eliza — best experience base of anyone, knows SS, liked
JCJ, very positive. Liked he a lot & one to bring back
Shelah — absolutely lovely, on point exp & level of this role.
will exp a great "RA-Rn" to the value. A delight. Move
*.                                              Forward.
[redacted]   — i/v on Monday

Shelah — meets the qualifications but "not
ready for this step."

[redacted]

met Shelah — gree bit dry
need to reschedule & Eliza.

Doc ID: 3238028897a03f96eff52c9e05c8f40132fecdba

**Dropbox Sign**

Audit trail

| | |
|---|---|
| **Title** | EEOC Charge with Attachment and Exhibits |
| **File name** | 2025-05-09%20EEOC...20%28FINAL%29.pdf |
| **Document ID** | 3238028897a03f96eff52c9e05c8f40132fecdba |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested from app.clio.com**

## Document History

**SENT**
05 / 09 / 2025
22:33:39 UTC
Sent for signature to Mark Z. Sappir (msappir@bellatlantic.net) from tschaeffer@stembercohn.com
IP: 13.92.176.197

**VIEWED**
05 / 11 / 2025
15:47:26 UTC
Viewed by Mark Z. Sappir (msappir@bellatlantic.net)
IP: 74.111.188.171

**SIGNED**
05 / 11 / 2025
15:48:38 UTC
Signed by Mark Z. Sappir (msappir@bellatlantic.net)
IP: 74.111.188.171

**COMPLETED**
05 / 11 / 2025
15:48:38 UTC
The document has been completed.

Powered by **Dropbox Sign**

## <u>CERTIFICATE OF SERVICE</u>

I, Adam D. Brown, certify that on June 29, 2026, I caused a copy of the foregoing Brief in Support of Motion to Dismiss to be filed electronically, and the same is available for viewing and downloading from the ECF System by the following counsel of record:

Walter S. Zimolong, Esq.
Zimolong, LLC
PO Box 552
Villanova, PA 19085-0552
wally@zimolonglaw.com
215-665-0842

Jonathan F. Mitchell, Esq.
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
jonathan@mitchell.law

Nicholas R. Barry, Esq.
William F. Scolinos, Esq.
Trey Donathan, Esq.
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, D.C. 20003
202-964-3721
nicholas.barry@aflegal.org
william.scolinos@aflegal.org
trey.donathan@aflegal.org

*Attorneys for Plaintiff,*
*Mark Z. Sappir*

*/s/ Adam D. Brown*
Adam D. Brown, Esquire